**Leo LITT (Plaintiff), Appellant,**

v.

**Clarence ALLEN (Defendant), Respondent.**

No. 29789.

St. Louis Court of Appeals.

Missouri.

May 6, 1958.

Motion for Rehearing or for Transfer to
Supreme Court Denied June 5, 1958.

Morris A. Shenker, John E. Bardgett, Sidney M. Glazer, St. Louis, for appellant.

Frank B. Green, St. Louis, Lloyd E. Boas, St. Louis, of counsel, for respondent.

ANDERSON, Judge.

This is a negligence action instituted by plaintiff, Leo Litt, against Clarence Allen. In said suit plaintiff sought to recover damages for personal injuries sustained by him as a result of a collision between a truck, in which he was a passenger, and an automobile being operated by defendant. The trial resulted in a verdict and judgment in favor of defendant. Plaintiff has appealed.

The accident occurred on December 23, 1955, at the intersection of Purdue and Midland Avenues in University City, Missouri. Midland Avenue is a north-south street. It has six traffic lanes—three for northbound traffic and three for southbound traffic. In the center of Midland Avenue, separating the northbound traffic lanes from those for southbound traffic, is a parkway approximately 50 to 60 feet wide. The driveways on each side of this parkway are 30 feet wide. Purdue Avenue runs generally east and west, and intersects Midland Avenue. The separation of the parkway at this intersection was estimated to be from 50 to 75 feet. There is a stop sign for eastbound traffic on Purdue about 10 feet from Midland. There is no stop sign for southbound traffic on Midland.

The accident occurred about 7:30 a. m. Plaintiff was a passenger in a 1951 truck which was at the time being driven by Martin Abramovitz. Plaintiff and Abramovitz were partners doing business as Ace Waste Material Company. The truck belonged to the partnership. Joe Walinsky, an employee of the partnership, was also a passenger. All three were on their way to work. It was the regular procedure each morning for Abramovitz to call first for plaintiff and then pick up Walinsky, who lived on Purdue Avenue about a block from the scene of the accident. This was the procedure followed on the day of the accident.

The truck was eastbound on Purdue, and defendant's automobile was southbound on Midland. Plaintiff testified that Abramovitz stopped the truck at the stop sign, then proceeded into the intersection at a speed of about 5 miles per hour. He stated that when the truck reached the second southbound traffic lane, a car traveling 35 miles per hour darted in front of it. This car was in the southbound lane next to the parkway. The truck was at that

time about a car's length from the parkway. Abramovitz made a sudden application of the brakes and brought the truck to a full stop. The truck was then about 35 feet past the stop sign. The sudden application of the brakes killed the motor of the truck. Abramovitz attempted to start the motor but was unsuccessful. The truck was stopped for about a half minute when it was struck by defendant's car.

Plaintiff saw defendant's car prior to the collision. At that time the truck was at the stop sign and defendant's car was about 50 feet from the intersection. Defendant did not sound the horn on his car or swerve in either direction prior to the collision. After the accident there were skid marks 30 feet long leading up to the truck. There were no other cars behind or to the side of the truck as it proceeded across the intersection. There was no other traffic alongside defendant as he proceeded toward the intersection.

Abramovitz testified that he stopped at the stop sign located on the west side of Midland, then headed across the intersection. He attained a speed of 7 to 10 miles per hour. When he reached a point 7 to 10 feet from the parkway, and when a little over halfway from the center of Midland, an automobile cut in front of him causing him to apply the brakes and kill the engine. The truck was stopped about thirty seconds when it was run into by defendant's car. During that time Abramovitz stated he was attempting to get the motor started, and while doing this he saw the defendant's car approaching. Defendant's car was about 75 feet away and traveling between 30 and 35 miles per hour. Defendant did not swerve or sound the horn on his car. The left front part of defendant's car struck the truck.

Ralph Tackes, a police officer, testified that the left side of the truck was damaged around the door, the running board, and in front of the rear wheel.

Joe Walinsky was called as a witness by plaintiff. His testimony was, in the main, similar to that given by plaintiff and Abramovitz.

Defendant testified as follows: His sister-in-law was riding with him as a passenger. There was no other traffic going south with him as he approached Purdue Avenue. When he was 30 feet from the intersection he saw the truck between the stop sign and the west curb of Midland. He watched the truck and observed that it kept moving and suddenly came to a stop. At that time he (defendant) was "just about out of the intersection." As soon as he saw the truck stopped he "hit the brakes," but was not able to stop in time to avoid a collision. At the time he applied the brake his car slid to the left, and he "cut it to the right." The front of his car came in contact with the left side of the truck. He stated that when the truck stopped it was about 30 feet in front of his car. He was going about 30 miles an hour at the time he saw the truck stop.

On cross-examination, defendant testified that when he first saw the truck it was about 30 or 35 feet from the north curb. He continued to watch, and when the truck stopped the front end of his car was just over the intersection. He stated that the streets were "moist" that morning. Defendant further testified that when he saw the truck approach and enter the intersection he did not reduce his speed. He did not sound the horn when he saw Abramovitz going into the intersection. His car was traveling 10 or 15 miles an hour at the time of the collision. The brakes on his car were in good condition, having been repaired just prior to the accident.

Plaintiff submitted his case, in Instruction No. 1, on charges of primary negligence (excessive speed and failure to swerve), instructing that if the jury found that the vehicle in which plaintiff was a passenger was caused to come to a sudden stop, and while stopped was struck and collided with by defendant's automobile and plaintiff was injured, and that "defendant operated his said automobile at a

rate of speed that was excessive under the circumstances and failed to swerve his said automobile to the right and was negligent, if you so find, and if you further find and believe that as a direct and proximate result of such negligence, if any, plaintiff was injured, then your verdict will be in favor of plaintiff and against defendant."

The issue of contributory negligence was submitted in Instruction No. 2, given at defendant's request. By it the jury was instructed: " * * * if you find and believe from the evidence that the driver of the truck, Martin Abramovitz, drove and operated said truck eastwardly into the southbound lane of Midland Boulevard and stopped said truck suddenly in the path of, and in close and dangerous proximity to, the automobile being driven by the defendant, if you so find, and if you further find that in so doing and in so stopping the driver of said truck was not exercising the highest degree of care in the operation of his motor vehicle and that such acts were negligence, if you so find, and that such negligence, if any, directly contributed to the plaintiff's injuries, if any, then in that event you should find that the plaintiff was guilty of contributory negligence and he cannot recover herein against the defendant, Clarence Allen, under Instruction 1, and your verdict must be for the defendant, and this is true even though you find that the defendant was also negligent under Instruction No. 1."

Appellant asserts the trial court erred in giving Instruction No. 2 on behalf of defendant because "it failed to require a causal connection between the negligence alleged and plaintiff's injuries." In support of this contention, it is urged that the instruction submits two theories of contributory negligence, namely: (1) driving the truck into the southbound traffic lane; and (2) stopping suddenly in the path of and in close and dangerous proximity to defendant's automobile. From this premise, it is argued that the instruction is erroneous because it is not clear which charge the jury

was required to find as a proximate cause of plaintiff's injuries. It is also contended that driving the truck into the southbound lane could only be a prior and remote cause and could not, under the circumstances, be considered as the proximate cause of the accident.

■ The fundamental fallacy in appellant's position is in the assumption that the instruction submits a double charge of negligence. There was no charge in the answer that Abramovitz was negligent by merely driving into the intersection, nor was there any such contention made during the trial. The gist of the defense was that Abramovitz was negligent in stopping the truck suddenly in the path of and in close and dangerous proximity to defendant's car. Juries, selected according to law, are presumed to have ordinary intelligence and common sense, and certainly a jury composed of reasonable men would not be likely to interpret the instruction as authorizing a finding that Abramovitz was negligent in entering the intersection.

It is next contended that if the instruction is construed as submitting a single charge of negligence it is faulty in failing to require a finding that there was apparent danger of collision. Appellant cites Stakelback v. Neff, Mo.App., 13 S.W.2d 575; Rayburn v. Fricke, Mo.App., 243 S.W.2d 768; and Greenwood v. Bridgeways, Inc., Mo.App., 243 S.W.2d 111.

■ The instruction requires a finding that said truck was stopped "suddenly in the path of, and in close and dangerous proximity to, the automobile being driven by the defendant." A requirement that the truck stopped in "close and dangerous proximity to defendant's car" would be understood by an ordinary juryman to mean that the truck stopped in a place where there was apparent danger of collision. If plaintiff was fearful that the instruction was too cryptic and did not clearly hypothesize this essential fact, he should have offered a clarifying or amplifying instruction. Hooper v. Conrad, 364 Mo. 176, 260 S.W.2d 496;

Witt v. Peterson, Mo.Sup., 310 S.W.2d 857. The cases relied upon are distinguishable and not in point. In each case the condemned instruction failed to set out facts upon which the jury could find the presence of a duty to take steps to protect plaintiff from injury. In other words, the facts and circumstances hypothesized in each case cited were not such as to show an inherently dangerous situation so as to raise a duty to act on the part of the defendant. In the instant case, Instruction No. 2 differs from the instructions given in the Stakelback, Rayburn and Greenwood cases, in that it hypothesizes an inherently dangerous situation brought about by the movements of the truck by requiring a finding that the truck entered the intersection and stopped suddenly in the path of, and in *close and dangerous* proximity to, the automobile being driven by defendant. We must hold there were sufficient facts hypothesized in Instruction No. 2.

■ Appellant complains that Instruction No. 2 is not supported by the evidence. In our judgment, there is no merit to this contention. The testimony of defendant was as follows: Defendant first saw the truck when his automobile was 30 feet north of the north curb line of Purdue. He was approximately 60 feet from the point of impact at that time and was traveling approximately 30 miles per hour. The truck at that time was moving between the stop sign and the west curb of Midland. The truck continued to move into the intersection and came to a sudden stop directly in the path of defendant's car. Defendant testified there was no other traffic going south as he approached Purdue. Defendant immediately applied the brakes on his car.

At thirty miles per hour defendant was traveling 45 feet per second, and would have traveled the distance of 60 feet in one and one-third seconds. From the testimony that there was no one traveling south with defendant, the jury could have disbelieved plaintiff's evidence that he was forced to stop because of an automobile passing in front of him. Clearly, in our view, the issue of contributory negligence was for the jury. We rule the point against appellant.

■■ The first paragraph of Instruction No. 2 advised the jury that the truck driver was, under the law, bound to exercise the highest degree of care in the operation of said vehicle. It also contained a proper definition of the term "highest degree of care." No complaint is made that said instruction did not properly declare the law with reference to these matters. However, appellant says that the instruction, by charging the jury that the truck driver was bound to exercise the highest degree of care, was erroneous "because it implied that defendant in driving his automobile was not required to exercise the same degree of care." In our judgment, no such implication can be drawn from the language used. Instructions which properly declare the law must be construed according to their essential meaning as expressed in the language used, and refined distinctions should not be indulged in to alter that meaning. Hypercritical or artificial construction should be avoided. There is no merit to the point made.

■■ Appellant next complains that the trial court erred in refusing his requested Instruction A. By this instruction plaintiff sought to have submitted as negligence the failure of defendant to yield the right of way to the truck in which plaintiff was riding. Plaintiff did not, in his petition, plead such negligence; nor can it be said that such issue was tried by the express or implied consent of the parties. The general rule is well settled that instructions should be confined to the issues made by the pleadings, and that error cannot be predicated upon the refusal to give an instruction which is based on an issue not raised by the pleadings. Stupp v. Fred J. Swaine Mfg. Co., Mo.Sup., 229 S.W.2d 681; Bourne v. Pratt & Whitney Aircraft Corp. of Missouri, Mo.App., 207 S.W.2d 533; Banta v. Union Pacific R. Co., 362 Mo. 421, 242 S.W.2d 34; Cochran v. Jefferson County

Lbr. Co., Mo.App., 132 S.W.2d 32; Stokes v. Godefroy Mfg. Co., Mo.Sup., 85 S.W.2d 434.

Finally, it is urged that the court erred in sustaining defendant's objection to a certain statement made by plaintiff's counsel during his closing argument.

Defendant's sister-in-law, Virginia Allen, was a passenger in defendant's car at the time of the accident. She was not produced as a witness at the trial. Defendant testified she was in the hospital at the time, for an operation on her knee. On cross-examination, defendant testified he did not know where his sister-in-law was; then, in answer to the court's question, again stated she was in the hospital.

During the argument of plaintiff's counsel, Mr. Byrne, the following occurred:

"Another thing in question is where is Virginia Allen. The only thing you heard was the vague statement she was in the hospital.

"Mr. Woods: I am going to object to that because there is no showing that Virginia Allen could be here, and if she could be here, Mr. Byrne couldn't bring her into the courtroom.

"The Court: This is argument, ladies and gentlemen. You will be guided by the evidence.

"Mr. Byrne: Don't you think if your sister-in-law and your brother-in-law were riding in your automobile and you had an accident, that he or she would come to court. Remember this, there is a family relationship there and the law presumes that her testimony would be more favorable to the defendant.

"Mr. Woods: I again object, Your Honor.

"The Court: Objection sustained. The law in this case has been set out in the written instructions of the Court.

You will be guided by those instructions. And in counsel's argument to the jury, you must confine yourself to those instructions."

■ It is urged that the court, by its ruling, deprived plaintiff's counsel of the right to comment on the non-production of a witness who was more available to defendant than to plaintiff. Such was not the effect of the court's ruling. What the court did was to sustain an objection to the statement that there was a presumption of law that the testimony of the witness would be more favorable to defendant than to plaintiff. It is difficult to see how plaintiff could have been hurt by this ruling.

But plaintiff says that, under the court's ruling, he was prevented from arguing to the jury that by reason of the presumption and non-production of the witness there arose an inference that the testimony of the witness would have been unfavorable to defendant. There is no merit to the point made. The ruling of the court was obviously intended to prevent counsel from presenting the matter to the jury as a presumption of law. Plaintiff's counsel still had the right to argue to the jury that, under the facts, they could draw an inference that Mrs. Allen's testimony would be unfavorable to defendant. He did not avail himself of this privilege—through no fault of the trial court, but apparently from a misunderstanding of the court's ruling.

■ Failure to call a witness under the circumstances shown by the record in this case would justify an inference that the testimony of the witness would be unfavorable to the defendant. This permissible inference is sometimes erroneously referred to as a presumption of fact. Wigmore on Evidence, Vol. IX, § 2491, page 288. For the difference between a presumption of law and a presumption of fact, see Joyce v. Missouri & Kansas Telephone Co., Mo. App., 211 S.W. 900, loc. cit. 901. Clearly, the court below did not err in its ruling.

Finding no error in the record, the judgment is affirmed.

RUDDY, P. J., and JOHN K. REGAN, Special Judge, concur.