Mary K. HANCOCK, Plaintiff-Respondent,

v.

Carolyn Sue LIGHT and Theodore Laux, Defendants,

Theodore Laux, Defendant-Appellant.

No. 32987.

St. Louis Court of Appeals.

Missouri.

Dec. 17, 1968.

Smith & Colson, David L. Colson, Farmington, Joseph E. McGuire, Lloyd E. Eaker, Clayton, for defendant-appellant.

Roberts & Roberts, Farmington, for defendant, Light.

E. L. McClintock, Jr., Flat River, for plaintiff-respondent.

JACK A. POWELL, Special Judge.

This is an action by Mary K. Hancock, respondent, to recover damages for the death of her husband who died as a result of injuries received in an automobile accident which occurred in St. Louis, Missouri, on June 11, 1966, when an automobile being driven by defendant Laux collided with an automobile being driven by defendant Light. The decedent was a passenger in defendant Light's automobile. The petition charged defendant Laux with failure to keep a careful lookout and failure to yield the right-of-way, and prayed damages in the sum of Twenty-Five Thousand Dollars ($25,000.00).

The jury returned a verdict in favor of respondent in the sum of Seventy-Five Hundred Dollars ($7,500.00) to be assessed against both defendants, and judgment was entered thereon on June 8, 1967. Defendant Laux appeals.

We are first confronted with a Motion to Dismiss Appeal. Respondent makes three principal contentions: First, that appellant has not complied with Rule 83.05(c), V.A.M.R., in that appellant's brief does not contain a fair and concise statement of the facts relevant to the questions presented for determination upon this appeal; Second, that appellant has failed to give the facts in this case in narrative form, and, instead, has merely narrated the testimony of each witness as they appeared, contrary to the provisions of Rule 83.05(c), V.A.M.R.; Third, that appellant has complained of Instruction No. 2, but has failed to set forth

in his brief the text of Instruction No. 2 either in full or in part, contrary to the provisions of Rule 83.05(a), V.A.M.R.

Under Point IV, appellant in his brief complains that the trial court erred in permitting the following testimony which was not the *best evidence*: (A) Frank Smillie was permitted to testify from a copy of a statement over appellant's objections;[1] (B) Officer Rowland was permitted to testify and read statements from a copy of a police report over appellant's objections.

In the Motion to Dismiss, respondent first discusses Point IV–A and calls attention to the fact that appellant failed to advise the Court of the following: (1) Witness Warziniak identified his signature upon the exact copy used to cross-examine him; (2) witness Warziniak acknowledged reading the statement before he signed it; (3) the statement used at the trial was a duplicate copy made simultaneously with the first copy; (4) the statement was used by the witness Smillie to refresh his memory only, as he testified he also had independent recollection of the statements made to him; (5) the statement was not admitted into evidence upon appellant's objection. We further note that in the cross-examination of witness Smillie, *appellant's* attorney either read or had the witness read all or a large part of the statement in question to the jury. To this point in the trial, nothing in the statement had been read to the jury. Appellant fails to mention any of these matters in his brief.

As to Point IV–B, respondent calls attention to the fact that appellant failed to advise the Court of the following: (1) Officer Rowland recognized this report as a copy of his full investigation report and used the report to refresh his memory; (2) the officer testified that he had an independent recollection of the report and its contents (this information was developed by appellant on *voir dire* examination); (3)

---

1. Witness Smillie was called by defendant Light to impeach Witness Warziniak who had been called by appellant. Smillie

had taken a written statement from Warziniak after the accident.

the report was not introduced into evidence and the trial court ruled its use was for the sole purpose of refreshing the officer's memory. We observe further, that when defendant Light's counsel made inquiry of the officer as to whether or not a certain statement had been made to him at the scene, appellant's counsel objected and insisted that if the Court permitted this evidence, then counsel should not inquire whether or not the statement had been made, but the officer should *read from the report* as to what was said. This procedure was followed. Appellant fails to mention this in his brief.

■ Respondent has carefully presented this motion and supported it with citations of authorities. We are cognizant of the many tribulations that frequently confront counsel, but appellant has filed no counter-suggestions nor has he sought the right to file additional statements of fact. A Statement or Facts which omits significant facts relied upon by an appellant's adversary is not a fair and concise statement of facts which complies with the provisions of Rule 83.05, V.A.M.R., Songer v. Brittain, Mo.App., 272 S.W.2d 16; Walker v. Allebach, 354 Mo. 298, 189 S.W. 2d 282; In Re P.J.K.'s Adoption, Mo.App., 359 S.W.2d 360. There is nothing in Point IV contained that suggests ultimate justice will be denied by our failure to consider this point. To consider the Point further in view of the foregoing can lend itself only to the breaking down of Rules that have been promulgated to better insure justice to parties involved in appeals. We will consider other points on appeal because we can readily ascertain the issues involved and because of the policy of the appellate courts to decide cases on their merits when reasonably possible. Domijan v. Harp, Mo., 340 S.W.2d 728; Martin v. O'Connor, Mo., 406 S.W.2d 41.

In Point I, appellant contends that the trial court erred in overruling appellant's motion for a directed verdict at the close of all the evidence for the reason that no acts or omissions of appellant were the proximate cause of the death of respondent's husband. Appellant contends "that the failure to keep a proper lookout was not the proximate cause of the collision. Neither was appellant's failure to yield the right-of-way the proximate cause."

We examine the facts. Time: June 11, 1966, a beautiful day. Place: University at 25th Street, St. Louis. University is 36 feet in width. Twenty-fifth Street is 38 feet in width. Defendant, Light, was traveling east on University. Appellant Laux was southbound on 25th Street. As they approached the intersection, defendant, Light, was to Laux's right. There were no control signals for either driver. Defendant, Light, testified that when she was approximately 20 feet from entering the intersection, she saw Laux's vehicle one-half block north of the intersection. She was traveling 10 to 15 miles per hour at this time. She then accelerated to 20 miles per hour as she entered the intersection. She was one-half way across the intersection when her step-father made an exclamation. She looked and the Laux automobile was just inches away. At the time of the collision, her automobile, from the front door forward was across the center line of 25th Street.

Appellant, Laux, testified that the block north of the intersection was a normal city block. That he first looked to his right when he was approximately one-half block north of the intersection. When he looked he was traveling 15 miles per hour. He could see four houses west on University and saw no vehicle coming. He then accelerated to 20 miles per hour but reduced his speed to 10 miles per hour or less before he entered the intersection. He again looked to his right when his front bumper was about to enter the intersection. He could see one-half block west on University. He saw no vehicle approaching. He increased his speed to 15 miles per hour and the front end of his automobile went about 5 or 6 feet south of the center of University when it collided with the other vehicle. He did not at any time see the Light car

* * * just a red blur when the front end of his automobile was 5 or 6 feet past the center of the intersection. He had good brakes. On the occasion that he looked and saw nothing coming for one-half block, there was no obstruction to keep him from seeing an oncoming automobile. Defendant, Light, testified there was no obstruction of view either way to vehicles approaching the intersection; that the elevation of the lawn at the northwest corner of the intersection did not obstruct the view of automobiles or their movement.

The above testimony will suffice for the present in the discussion of Point I raised by appellant.

■ On the question of whether or not respondent made a submissible case as a matter of law, we must view the evidence in its most favorable light as to the respondent.

■■ Does the evidence support a finding that appellant negligently failed to yield the right-of-way? Defendant, Light, testified that when her automobile was but 20 feet from the intersection and traveling at a speed of approximately 10–15 miles per hour, she first observed the appellant's automobile one-half block away. Appellant described this as a normal block, and absent evidence to the contrary, this block may be assumed to be 300 feet long. Hamell v. St. Louis Public Service Co., Mo.App., 268 S.W.2d 60; Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73. Based on this testimony, the jury could find that when the Light automobile was 20 feet from the intersection, the appellant's automobile was approximately 150 feet from the intersection. Defendant, Light, stated that after she made this observation she increased her speed to 20 miles per hour as she entered the intersection. Her judgment as to the speed of appellant's automobile when first observed was 40 miles per hour. Appellant testified that the fastest speed he drove during the last one-half block before reaching the intersection was 20 miles per

hour. Even if we should require respondent to be bound by the testimony of defendant, Light, as to appellant's speed, it is apparent that this evidence would justify the jury in finding that appellant failed to yield the right-of-way for the reason that this testimony, if believed, would result in the Light automobile entering the intersection first. At 10 miles per hour, the Light automobile would reach the intersection in approximately one and one-half seconds. At 40 miles per hour, the appellant automobile would have traveled approximately 88 feet in one and one-half seconds. Because the Light automobile was to appellant's right, evidence to support a finding that the two vehicles arrived at approximately the same time would have been sufficient to support respondent on this point.,

■ We move on to the question of lookout. Appellant testified he did not see the Light automobile at any time before impact. He did see a blur, but under the testimony, this was at the moment of impact. When he was approximately one-half block away from the intersection, he looked·west and could see as far as four houses west on University. He saw nothing and *did not look again* until the front of his automobile was right at the intersection. He then looked again to the west and could see down the street one-half block. He saw nothing coming. Appellant further testified that before he actually entered the intersection he put his foot on the brake and slowed to 10 miles per hour or less. It was at this point that he looked west and could see one-half block, but observed no automobile coming. The law required appellant to keep a careful lookout at all times and under all circumstances. Failure to do so amounts to negligence. Counsell v. Rickenbaugh, Mo., 431 S.W.2d 86. The jury had a right to find that if appellant had kept a careful lookout, he would have seen the Light automobile. From appellant's own testimony, one must conclude that a submissible case on lookout was made.

We have no quarrel with the cases cited by appellant. The case of Vietmeier v. Voss, Mo., 246 S.W.2d 785, is cited for the proposition that the plaintiff must prove his case and he must do so by substantial evidence of probative value or by inferences reasonably to be drawn from the evidence. A plaintiff must remove his case from the field of conjecture and speculation. Appellant also cites Pyles v. Roth, Mo., 421 S.W.2d 261, on this point. We concur. But we have set forth the testimony of parties relating to certain facts. And, if the jury believed these facts, as it had a right to do, the verdict certainly could have been reached without resort to speculation or conjecture. The argument as to whether or not either of these alleged acts of negligence on the part of appellant could have been a proximate cause of the death of respondent's husband has not been ignored. If the jury believed that the Light automobile was 20 feet from the intersection when defendant Light saw appellant's automobile approximately 150 feet from the intersection, as it had a right to do; and if the jury further believed that the appellant could have seen the Light automobile at such time, as it had a right to do; then the jury could find that if appellant had kept a careful lookout, he could have avoided the accident. The plaintiff-respondent called defendant, Light, to the stand and then called appellant, Laux, to the stand to testify. The jury could have believed the testimony of one defendant and rejected the testimony of the other. Or, the jury could have believed parts of one defendant's testimony and rejected other parts of such defendant's testimony. A plaintiff is not bound by the testimony of his own witnesses insofar as such testimony is contradicted by plaintiff's other evidence. Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295. If the jury believed appellant that he approached the intersection at a speed not exceeding 20 miles per hour and that he reduced his speed by putting his foot on the brake to a speed of 10 miles per hour or less, and if the jury believed defendant, Light, that she approached the intersection at a speed of 10 to 15 miles per hour, and if the jury further believed either defendant as to visibility, the jury could have found that neither kept a proper lookout and that either could have stopped prior to the impact. Further, the testimony of either driver would have supported a jury verdict that the other failed to yield the right-of-way. If the jury found that appellant failed to yield the right-of-way, then the jury could have arrived at a verdict that such failure was a direct and proximate cause or contributing cause for the collision and the death of respondent's husband.

Now to Point II. Appellant fails to set forth Instruction No. 2, but appellant does complain that there was no substantial evidence as to any negligence on the part of appellant to substantiate the giving of Instruction No. 2 on failure to keep a lookout or his failure to yield the right-of-way. We have discussed the evidence as regards both lookout and failure to yield right-of-way in our consideration of Point I raised by appellant. We have concluded that there was substantial evidence introduced on each charge of negligence to make a submissible case. No further consideration of this point is necessary.

Point III of appellant's brief charges the trial court "erred in failing to declare a mistrial and to discharge the jury at the request of appellant during the *voir dire* when respondent's counsel questioned the panel regarding the lawsuit, their affiliation as an agent or employee of either of the insurance companies, for the reason that said questions were asked in such a manner as to inject the issue of insurance into the case."

Prior to *voir dire* and outside the hearing of the jury panel, respondent's counsel inquired as to the names and locations of the insurance carriers interested in the litigation. The names and locations of two companies were supplied. There was no discussion as to what questions might be propounded. Appellant objected to any

question being propounded on the ground that it would be a bad faith attempt to prejudice the jury against appellant. This objection was overruled. Appellant sought no relief as to the limits of the *voir dire* examination on the insurance question.

The record discloses that twelve members of the jury panel were at the north side of the courtroom and six members were seated on the south side of the courtroom. A separate *voir dire* was conducted of each group.

The *voir dire* conducted by respondent was limited and for the most part consisted of general questions to each panel group. The specific question asked of each panel group was whether any members of the jury or their immediate family were either employees or agents of either of the insurance companies. The question immediately preceding this question was whether or not any of the jury felt it was wrong to sue for the death of another person. The question immediately following the insurance question was whether any of the members of the jury had been defendants in a lawsuit.

Thus, we observe that the question was a general question asked in between other general questions.

Appellant does not contend that the verdict was excessive, "but merely that this appellant was prejudiced by the injection of the insurance question into the case * * *." Appellant contends that insurance was injected into the case because of the repetition and the manner in which the questions were asked and cites Olian v. Olian, 332 Mo. 689, 59 S.W.2d 673; McCaffery v. St. Louis Public Service Co., 363 Mo. 545, 252 S.W.2d 361; and Gooch v. Avsco, Inc., Mo., 340 S.W.2d 665. All of these cases recognize that a plaintiff may inquire of jurors on *voir dire* as to their relationship to, or interest in, an insurance company, if a proper foundation has first been laid and if the questions are properly phrased. The failure of the trial court to permit such inquiry has been held to be re-versible error. See Pinter v. Wilson, Mo., 46 S.W.2d 548 and Aiken v. Clary, Mo., 396 S.W.2d 668.

In *Olian*, supra, the error occurred when evidence of an insurance carrier being involved was introduced in the trial itself. The *voir dire* examination was held to have been proper. In *Gooch*, supra, the *voir dire* examination was much broader and more repetitive than here, but was held not objectionable. In *McCaffery*, supra, the name of the party interested in the outcome of the case was Transit Casualty Company. The plaintiff, on *voir dire*, referred to the Transit Casualty Company, "an insurance company." This was held as objectionable, but was not reversible error.

Here, respondent disclosed good faith by laying a proper foundation for the *voir dire*. The question on *voir dire* was a general question to the panel, and neither the first or the last, so as to unduly emphasize its importance. There was no further mention of insurance in the case. The *voir dire* question was a proper one. The real issue comes in whether or not there was error committed in asking the question in a series of questions to one section of the panel on one side of the courtroom and subsequently repeating this series of questions, including the insurance question, on the other side of the courtroom to the balance of the panel.

In Hays v. Proctor, Mo.App., 404 S.W.2d 756, l.c. 760, this Court said: "* * * The prevailing rule of law is that permission to ask the question of the jury concerning an insurance company that may be interested in the result of the trial must be left to the sound discretion of the trial court and only where a manifest abuse of discretion appears should this court interfere. * * *" (citing cases). The courtroom situation wherein the jury panel is divided is not unique. Whether or not respondent acted in good faith in the manner and method of making inquiry is a matter which the trial judge may best determine. The trial court concluded that no

prejudice occurred. We find no abuse of its discretion in this conclusion.

We now direct our attention to the final point raised by appellant which is: "The Court erred in permitting counsel for defendant Light to comment during closing argument about the failure of passengers in appellant Laux's car to testify when said witnesses were equally available."

This assignment of error produces a question broader than contained in the motion for new trial. The Motion for New Trial complained of the trial court's overruling of appellant's objection to the argument by counsel for defendant, Light, that the wife of defendant, Laux, (appellant) was present in the courtroom on the second day of trial and expected to back up the story of Mr. Laux.

■ Arguments of counsel must be presented to the trial court in a Motion for New Trial in order to be preserved for appellate review. Marler v. Pinkston, Mo., 293 S.W.2d 385, l.c. 388. However, since we must review the propriety of the argument as respects the comments as to appellant's wife not testifying, we deem it proper to consider the broader question as regards passengers in appellant's automobile, who were relatives of appellant's wife, as it arose from the same argument and the same objection made during the trial.

Attorney for defendant, Light, called the jury's attention to the fact that Laux's wife did not testify. He then asked the question as to where were the rest of Laux's relatives who were in the automobile.[2]

The testimony discloses that Frances Morris (Mrs. Laux at time of trial) was in the front seat of appellant's automobile at the time of the accident, as was Gladys Morris, Frances Laux's grandmother. In the back seat were Frances Laux's aunt and two cousins.

■ Appellant cites Belding v. St. Louis Public Service Co., 358 Mo. 491, 215 S.W. 2d 506, for the proposition that "an inference may not be drawn and an unfavorable comment made by counsel on account of the nonproduction of witnesses whose evidence is equally available to both parties." This is clearly the law of Missouri. It is also the law of Missouri that "equally available" does not mean merely that a witness is equally subject to process or to be called. The relationship of the witness to a party is a consideration under the Missouri authorities.

In Williams v. Ricklemann, Mo., 292 S. W.2d 276, the Court held it improper of the trial court to refuse the plaintiff the right to comment on the failure of the defendant and his wife to testify. The ruling was not limited to the comment as to the defendant party not testifying, but included his wife. In Spica v. McDonald, Mo., 334 S.W.2d 365, it was held proper for counsel to comment on the failure of defendant (who had

2. "MR. ROBERTS: * * * And one more thing I want to comment on. Yesterday morning we were told that why Laux's wife couldn't be here. I presume that she's here in the courtroom, I don't know. She didn't testify. And where are the rest of his relatives—MR. McGUIRE: Your Honor, I'm going to object to this; that's highly improper and this lawyer's been in practice long enough to know it. They are equally available and I object to this comment. THE COURT: Just a moment, just a moment. Now, do you have a reason for your objection? MR. McGUIRE: They are equally available to both parties, and thus any comment of this nature is highly improper. THE COURT: The objection's overruled. Let's proceed. MR. ROBERTS: They are not equally available to me because they are all relatives of theirs. MR. McGUIRE: Your Honor, I want to object—MR. ROB-. ERTS: And relatives you can expect to testify in their own behalf. THE COURT: Now, wait. Let Mr. McGuire —MR. McGUIRE: Let our objection run to all comments of this nature, Mr. Reporter. THE COURT: Very well. Go ahead. MR. ROBERTS: They didn't come here. Why? You have to determine that, I don't. Now, not a one of 'em, six of 'em, five of 'em in that automobile, all relatives of Mr. Laux, and not a single one of 'em was invited up here to tell you what happened."

presented a counterclaim for injuries) to call her mother to testify. In Smith v. Kansas City Public Service Co., 227 Mo. App. 675, 56 S.W.2d 838, cited by respondent, it was held error for the trial court to refuse to let counsel for defendant comment on the failure of plaintiff to call her brother as a witness.

■ From the foregoing cases, it is clear that it was not improper to comment on the failure of appellant to call his wife to testify under the facts of this case. But, what shall we say as to the reference to the other relatives who were related by marriage only to appellant at the time of trial? This Court held in Litt v. Allen, Mo.App., 313 S.W.2d 183, that the trial court properly sustained an objection to argument of counsel about the failure of a sister-in-law to testify. This ruling, however, was due to counsel's effort to argue it as a *presumption of law*. We held that plaintiff's counsel had the right to argue to the jury that under the facts, they could draw an inference that the sister-in-law's testimony would be unfavorable to defendant. The case of Eaves v. Wampler, Mo.App., 390 S. W.2d 922, gives some support to appellant's position. In *Eaves*, supra, plaintiff's counsel commented on defendant's failure to call as witness the nephew of the defendant's husband. While this Court held that such comment was unwise, we further held that it was not prejudicial error in that particular case. We find no Missouri case where it has been held prejudicially erroneous to comment on the failure of a relative by blood or marriage to testify when such comment was properly presented by counsel and such witness had not previously testified by deposition or at trial. This does not mean, however, that such comment is proper under all factual situations. Each case must be considered in light of its own facts.

In this case, the argument was not made by respondent, the plaintiff. The argument was made by counsel for defendant Light. Appellant, Laux, and defendant, Light, were trying to prove that the other was

solely responsible for the collision. Appellant had five passengers in his automobile. All were possible eyewitnesses. The five who did not testify were all related to appellant by marriage at time of trial. The only relative mentioned in the argument by name was appellant's wife. This was proper and it would probably have been error to refuse that portion of the argument. Appellant did not request the trial court to limit the argument to the availability of appellant's wife. Further, in the absence of any showing of incompetency of witnesses, it is not unreasonable to believe that appellant would have produced one or more of his relatives by marriage if their testimony had been favorable to him. There was no evidence that depositions had been obtained of any of such witnesses so as to make their testimony equally available. See Bean v. Riddle, Mo., 423 S.W.2d 709. We conclude that the argument was not prejudicially erroneous under the factual situation presented in this case.

The judgment is hereby affirmed.

RUDDY, Acting P. J., and WOLFE, J., concur.