Ellen A. AVERSMAN (Bartoszkiewicz), Parent and Legal Guardian of the Deceased, Steven Eugene Aversman, Plaintiff-Appellant,

v.

Larry Wayne DANNER, Defendant-Respondent,

Leland Aversman, Next Friend for The Unborn Child of Steven Eugene Aversman, Intervenor-Respondent.

No. WD 31851.

Missouri Court of Appeals, Western District.

May 4, 1981.

George Lehnen, III, Richmond, for plaintiff-appellant.

Willim Aull, Aull, Sherman & Worthington, Lexington, for respondent Leland Aversman.

Before DIXON, P. J., and KENNEDY and NUGENT, JJ.

DIXON, Presiding Judge.

The issue on this appeal is whether or not the trial court properly determined the paternity of an illegitimate child. The underlying dispute which gave rise to the paternity issue is the determination of the proper party plaintiff in a wrongful death action to recover damages for the death of the putative father.

Steven Aversman, the decedent, was killed in a motorcycle-automobile accident. Decedent's mother and father had been divorced and the decedent lived in his father's home. On September 2, 1975, eighteen days after his death, his mother brought a wrongful death action. On October 3, 1975, the decedent's father was appointed guardian ad litem for an alleged unborn illegitimate child of decedent. Permission to intervene was granted on motion, and the decedent's mother appealed. That appeal was dismissed because of a lack of finality, 577 S.W.2d 910 (Mo.App.1979). The child was born in early 1976 and in May, 1980, the guardian filed a motion to dismiss the decedent's mother's petition on the ground that the cause of action for the decedent's death was vested in the illegitimate child. Section 537.080(2) RSMo Supp.1980. There was an evidentiary hearing, the trial court ordered dismissal and designated the order of dismissal a final appealable order.

■ The parties concede that if the child is the illegitimate child of the deceased, the action is properly brought on behalf of the child. *Levy v. Louisiana*, 391 U.S. 68, 88 S.Ct. 1509, 20 L.Ed.2d 436 (1968); Annot., 38 A.L.R.3d 613 (1971).

The dispute then centers on whether the child, Eric, born on February 23, 1976, was the illegitimate child of the decedent. That question is made more complex by reason of the fact that Judy Long nee Rogge, the mother of the child, married Gary Long some 37 days prior to the birth of the child.

Based upon that marriage, the decedent's mother argues that the presumption obtains that the child born in wedlock is the legitimate child of Judy Long and Gary Long and that the evidence presented is insufficient to overcome the presumption.

That contention requires a statement of the evidence presented on the issue at the trial court hearing.

Judy Long, the natural mother, testified that Steven Aversman, who died August 15, 1975, in a motorcycle accident, was the father of the child, and she was 2½ months pregnant at the time of his death. She had been dating the decedent since November of 1974. She asserted it was impossible for anyone else to have been the father of the child. She unequivocally denied sexual relations with Gary Long in 1975, but admitted she had been engaged to him for a week or two in the latter part of 1974. She asserted she had sexual relations with decedent in May and July, but she could not recall whether they had intercourse in June, since they had not dated each other that month. They resumed dating in July, a month or six weeks before his death. She denied sexual contact with anyone else in 1975. Aside from the two week engagement to Gary Long in December, 1974, she had dated decedent continuously from 1974.

Judy Long also testified to conversations with decedent's mother and grandmother which, at least by inference, showed that the decedent's mother and grandmother were aware of her pregnancy and volunteered assistance to her which implies they believed decedent was the father.

A stepsister of the decedent testified decedent told her that Judy Long was pregnant with his child and of decedent's intent to marry her. Similar admissions were made by decedent to his father of the tenor that decedent had "thought he had her pregnant." These admissions were two or three months before decedent's death. The stepmother of decedent also related similar admissions by the decedent in June and July. The foregoing constitutes all of the evidence offered on behalf of the intervenor.

The plaintiff, who did not live in the same area as the decedent, testified in her own behalf and offered the testimony of her mother, decedent's grandmother. This evidence consisted primarily of recitals of questions to Judy Long as to the paternity of the child and a claim that Judy Long made no response to the questioning. This occurred at decedent's funeral. The plaintiff also claimed the decedent was dating another girl in May and disclaimed interest in Judy in May. This information was based on phone calls made about every two weeks between May and June between the plaintiff-mother and decedent.

The plaintiff attacks the trial court order on the ground that the evidence is insufficient to overcome the presumption of legitimacy of the child arising from the postpregnancy marriage of Judy to Gary Long and the subsequent birth in wedlock of the child who seeks intervention as plaintiff.

The parties agree that this court-tried matter is subject to review under Rule 73.01 and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), but they part company on the issue of the question and quality of proof necessary to support the finding.

To facilitate analysis of the precise issue in this case, certain undisputed principles need statement. First, a child born in wedlock is presumed to be legitimate irrespective of whether the conception of the child may be calculated to have occurred before or after the marriage. *Bernheimer v. First National Bank of Kansas City*, 359 Mo. 1119, 225 S.W.2d 745 (banc 1949). Second, a party asserting illegitimacy of a child bears the burden of proof on that issue. *J. M. L. v. C. L.*, 536 S.W.2d 944 (Mo.App.1976).

It is in the statement of the force and effect of the presumption of legitimacy and the quantum and quality of proof necessary to overcome the presumption in which the variations and contradictions appear. It is now generally agreed, contrary to an earlier day, that the presumption is one of fact and that once overcome, it passes from the case. In stating the quantity and quality of proof necessary to overcome the presumption, there has been a wide variation in the language of the cases. Such expressions have been used as the quantum of evidence needed to rebut the presumption must not only be clear and convincing, *Stripe v. Meffert*, 287 Mo. 366, 229 S.W. 762 (1921), but must be such that no conclusion other than illegitimacy can be reached. *Brown v. Brown*, 609 S.W.2d 223 (Mo.App.1980); citing *F____ v. F____*, 333 S.W.2d 320 (Mo.App.1960). That language from *F____ v. F____*, *supra*, was repeated in *E. S. v. G. M. S.*, 520 S.W.2d 652, 654 (Mo.App.1975), and paraphrased and restated in *B. S. H. v. J. J. H.*, 613 S.W.2d 453

(Mo.App.1981), which also cites *E. S. v. G. M. S., supra*. It has also been said that the quantum of proof required to overcome the presumption must be "strong and persuasive" and "leave no room for reasonable doubt." *J. M. L. v. C. L.*, 536 S.W.2d 944, 947 (Mo.App.1976), citing *Jackson v. Phalen*, 237 Mo. 142, 140 S.W. 879 (1911); *J. D. v. M. D.*, 453 S.W.2d 661 (Mo.App.1970). However, none of these later cases utilizing such strong language to describe the quality and quantum of proof required have cited the latest controlling decision of the Supreme Court of Missouri dealing with the question. The Supreme Court of Missouri, in a case styled *In re L____*, Part II, 499 S.W.2d 490 (Mo.banc 1973), stated the rule as follows:

We are presented in this case with the ancient presumption that a child born in wedlock is presumed to be legitimate, which defendant is asserting for his own purposes rather than those of the child. At common law the presumption was conclusive and therefore a rule of substantive law. Today the presumption is rebuttable, an evidentiary presumption, and is overcome by a showing of substantial evidence (" 'clear, cogent and convincing proof' ") to the contrary. *In re L____, supra, l.c. 532–533. Upon presentation by the party against whom the presumption of substantial evidence to rebut the presumption, the existence or nonexistence of the fact once presumed is to be determined from the evidence as if no presumption had ever been operative in the case.*

499 S.W.2d at 492 (citations omitted).

Both the language and the holding of *In re L____*, *Part II* are persuasive in the instant case. In that case, which is a sequel to *In re L*, 461 S.W.2d 529 (Mo.App.1970), the court was confronted with the following situation. A married woman who was living with her husband brought an action against another man for a child conceived and born during the marriage and asserted the defendant was the father. Testimony of the wife and the husband was that they had not had sexual intercourse during the

period of conception. The wife asserted she had had sexual intercourse with the defendant. There was proof by the wife that the defendant had admitted paternity. The Springfield Court of Appeals had reversed the trial court decision which found the child illegitimate. The Supreme Court on transfer affirmed the judgment of the trial court, holding that the evidence was sufficient to rebut the presumption of legitimacy and to carry the burden of proof in favor of illegitimacy.

In *Claude T. v. Claire T.*, 579 S.W.2d 141 (Mo.App.1979), the court cited and followed the rule set forth in *In re L___, Part II* and upheld a trial court determination of illegitimacy. *L___ v. R___*, 518 S.W.2d 113 (Mo. App.1974), also cited *In re L___, Part II* and agreed with the trial court's finding of illegitimacy, although the court remanded on other grounds for further proceedings.

The evidence in the instant case, considering only the evidence offered by the guardian ad litem for the child, is sufficient under the rule announced in *In re L___, Part II* to rebut the presumption. The evidence here is stronger than that found sufficient by the Supreme Court in *In re L___, Part II*. It is likewise sufficient under the ruling of *Claude T. v. Claire T., supra*, to carry the burden of proof required by the proponent of illegitimacy when the evidence is based upon testimony by the mother and admissions of the putative father, the credibility of which is primarily for the trial court. The supposed requirement recited above, that the proof be "conclusive" or "beyond reasonable doubt" or "tending to support no other conclusion" is simply not consistent with the latest declaration of law by the Supreme Court of Missouri with respect to the quality and quantum of proof to overcome the presumption.

Two recent cases have suggested that even proof which meets those supposed requirements may not be sufficient to resolve the issue. *D. S. v. H. T. H.*, 600 S.W.2d 698 (Mo.App.1980); *B. S. H., supra*. Such statements are inherently contradictory because if the proof reaches the level required of such statements, then it would be anoma-

lous to require any further proof or to permit the finder of fact to find against such evidence upon the whole case. *Claude T. v. Claire T., supra*, was a case where the court found that there was sufficient evidence to rebut the presumption but insufficient evidence upon the whole case to persuade the trier of fact, demonstrating that no such proof beyond "reasonable doubt" is required to rebut the presumption.

In the instant case, the contrary evidence is of little weight, being essentially the silence of the mother, Judy Long, when confronted with the question as to whether her pregnancy was caused by the decedent. Under the circumstances she was under no duty to speak and she might well have had other reasons for not wishing to discuss the matter because of the occasion when the question was posed.

In re L___, Part II, *supra*, does carry forward the "clear, cogent, and convincing" standard of proof in cases involving illegitimacy. That change in the standard of measurement of the proof adduced does not change the applicability of the rule of *Murphy v. Carron, supra; Matter of O'Brien*, 600 S.W.2d 695 (Mo.App.1980).

Cited in support of the definition of clear, cogent, and convincing proof advanced in *O'Brien*, was *Grissum v. Reesman*, 505 S.W.2d 81 (Mo.1974), which stated:

The term frequently used in equity cases, with reference to the required degree of proof, is 'clear, cogent and convincing' evidence. The courts have seldom stopped to analyze that term. As we now construe the phrase, it really means that the court should be *clearly convinced* of the proposition to be proved. This does not mean that there may not be contrary evidence. The word 'cogent' adds little, if anything; it means impelling, appealing to one's reason, or convincing.

■ Insofar as the plaintiff here attacks the sufficiency of the evidence to rebut the presumption and to persuade the trial court on the issue of fact, the claim must be denied. The trial court saw and heard the witnesses, and this case—like many of its kind—turns primarily on the issue of credi-

bility. Giving proper deference to the trial court's better capability to determine the credibility and weight of the evidence, the trial court's determination will not be disturbed.

The mother's final attack centers on the effect of the failure to call Judy Long's present husband, Gary Long, as a witness. The mother asserts that the rule in Missouri is that

[W]hen a party fails to call a witness within her power who would have knowledge of facts and circumstances, this failure to call the witness raises a strong *presumption* that that person's testimony would have been unfavorable and damaging to the party who failed to proffer the same. *Bean v. Riddle*, 423 S.W.2d 709 (Mo.1968), reaffirmed in *Ehrle v. Bank Building and Equipment Corp. of America*, 530 S.W.2d 482 (Mo.App.1975).

The argument is countered by the assertion that the rule requires the witness to be more available to one party than the other (and that Long was equally available to the parties here), and second, that even if Long was more available to the intervenor, that only an *inference* of unfavorableness may be drawn, citing *Hancock v. Light*, 435 S.W.2d 695 (Mo.App.1968), and *Litt v. Allen*, 313 S.W.2d 183 (Mo.App.1958).

The cases cited do state that a "strong presumption" arises on the failure of a party to call an available witness who has knowledge of the facts. However, the use of the word "presumption" is an overstatement, and as pointed out in *Litt*, and *Hancock, supra*, the proper term is "inference." This distinction is borne out in the later cases: *Graeff v. Baptist Temple of Springfield*, 576 S.W.2d 291 (Mo.banc 1978); *Hailey v. Atchison, T. & S. F. Ry. Co.*, 579 S.W.2d 739 (Mo.App.1979). (The use of "presumption" may only mean "presumption of fact" which is the same as an inference—29 Am.Jur.2d *Evidence* §§ 160–61).

 An inference drawn from a party's failure to call a witness within its control is simply evidence; its weight is for the trier of fact. However, before this inference arises, there must be a showing that the witness is more available to one party than the other, since if he is equally available to both parties, no inference of unfavorability may be drawn against either party. *Hancock, supra*.

The question of availability in this unique factual situation is not easily resolved. A review of the tests set down in the earlier cases for availability does not simplify the determination in any appreciable degree.

The general rule regarding availability is stated in *Adam Hat Stores v. Kansas City*, 307 S.W.2d 36 (Mo.App.1957), affirmed on appeal, *Adam Hat Stores v. Kansas City*, 316 S.W.2d 594 (Mo.banc 1958), restated in *Graeff, supra*:

As to the word 'available' as so used, it does not mean merely available or accessible for service of compulsory process—a subpoena, but rather depends upon such matters as the party's superior means of knowledge of the existence and identity of the witnesses, the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case, and the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation, and make it natural that he would be expected to testify in favor of one party and against the other.

*Cooper v. Metropolitan Life Ins. Co.*, 94 S.W.2d 1070 (Mo.App.1936), also laid down a test for availability, and was referred to in *Graeff, supra*:

[F]or a witness to be 'available' to one party to an action so that upon that party's failure to produce him in court an inference arises that his testimony would have been unfavorable, there must have been such a community of interest between that party and the witness, or the party must have had so superior an opportunity for knowledge of the witness, as in ordinary experience would have made it reasonably probable that the witness would have been called to testify for

such party except for the fact that his testimony would have been damaging.

When the relationship between the child here and his mother's husband is compared to the relationship between the husband and the decedent's mother, in light of the tests announced above, no clear-cut answer to the question of availability surfaces. It is not "natural" as the term is used in both the *Graeff* and *Adam Hat* decisions, above, to expect the husband to have testified in favor of one party and against the other on these facts. Nor is there an overriding "community of interest," as the term is used in *Graeff* and *Cooper*, between the husband and either of the parties which would warrant a conclusion that he was more available to one or the other.

In fairness, it should probably be concluded that he was equally available and that no inference as to the tenor of his testimony arose. *Hancock, supra.* However, assuming arguendo, that an inference arose (in favor of the mother) that the husband's testimony might have been unfavorable to intervenor, there was still no error in the trial court's finding of paternity on the part of deceased.

The trial court, as trier of fact, may have taken the evidence into consideration or disregarded it. *In re Marriage of Jackson*, 592 S.W.2d 875 (Mo.App.1980). In either case, the judgment is not against the weight of the evidence.

The parties have not questioned the omission of the presumptive father and the natural mother as parties in this proceeding. Recent case law has found jurisdictional defect in situations where all of the parties involved in an issue of paternity have not been joined. *O___ F___ L___ v. M___ R___ R___*, 518 S.W.2d 113 (Mo.App. 1974); *J. M. L. v. C. L.*, 536 S.W.2d 944 (Mo.App.1976). The analysis in those cases turns on the application of Rule 52.04.

Solely to dispel any notion that this case represents a retreat from the principles announced in those cases, the issue, although not raised, will be briefly treated.

Despite the holdings of *O___ F___ L___ v. M___ R___ R___, supra*, and *J. M. L. v. C. L., supra*, the mother and her present husband are *not persons who are required to be joined* under Rule 52.04 to this wrongful death action.

Under 52.04(a)(1), their absence does not prevent complete relief from being granted those already parties, which was the rationale for requiring joinder in *O___ F___ L___ v. M___ R___ R___*, and *J. M. L. v. C. L., supra*.

Nor do they claim an interest relating to the subject matter of this action, which is the tort claim for wrongful death, Rule 52.04(a)(2). While they may have a consequential, remote, or conjectural interest, Rule 52.04(a)(2) requires a direct claim upon the subject matter of the action such that they will either gain or lose by direct operation of the judgment to be rendered. *State ex rel. Emcasco Insurance Co. v. Rush*, 546 S.W.2d 188 (Mo.App.1977).

While it may appear later that the doctrine of collateral estoppel defined in *Oates v. Safeco Insurance Co. of America*, 583 S.W.2d 713 (Mo.banc 1979), may affect later claims concerning the paternity of the child, it must be presumed that the next friend of the child has weighed and determined the consequences of litigating the legitimacy of the child in this posture. *Meyers v. Smith*, 349 S.W.2d 412 (Mo.App.1961). No reason appears, in the factual context of the instant case, to require a joinder of the natural mother and her present husband.

Affirmed.

All concur.