In the Matter of Mabel Nofsinger, *alias* Ella Bates.

St. Louis Court of Appeals, March 15, 1887.

Habeas Corpus—Custody of Child.—In a habeas corpus proceeding, instituted to secure the custody of a child, if the upholding of the relator's legal right to its custody is not inconsistent with its welfare, the custody of the child will be given to the relator.

Habeas Corpus proceeding.

*Custody of child awarded to the relator.*

James M. Loring, for the relator.

George W. Anderson, for the respondent.

Rombauer, J., delivered the opinion of the court.

The petitioner is a female child about eighteen months old, and the petition is filed on its behalf by Mary Maggie Nofsinger, who claims to be its mother and natural guardian.

The petition states that the child is in the possession of Mollie Lambert, to whom the writ was directed. The alleged mother and Mollie Lambert are herein designated as relator and respondent.

The respondent, who is the keeper of a house of ill fame, produced the child, in obedience to the writ, claiming that it was given into her custody by one to whom it was given at its mother's request; that the name of the child is Ella Bates, and that the relator is not its mother.

The facts whether the relator is the mother of the child, and whether, as such, between herself and the respondent, she is the more proper custodian, are the questions for decision. In deciding them, considerations affecting the welfare of the child are entitled to weight only in so far as the change of custody from the respondent to the relator may be prejudicial to the infant. The case has been twice tried, before an able and careful judge, each trial resulting in favor of the respondent. We have analyzed the evidence with critical care, and feel satisfied that our conclusion is warranted by the law as above stated, and by the evidence hereinafter detailed.

It is proved, and not controverted in any manner, that the relator gave birth to a female child, at the establishment of Dr. Fitzporter, in this city, in October,

1885. That this child, with the consent of the relator, was entrusted to the custody of a female who called for it one evening, accompanied by another female, and that this child was tongue-tied at its birth. The date when the child was born and given away is not positively fixed by any disinterested witness. The relator herself states the date of the child's birth as October 21, and the date of its being given away as November 2, and claims to testify to these dates positively, with the aid of some memoranda, made at the time, or shortly thereafter. To these memoranda, however, we attach little weight, as experience has shown that, when made by interested parties, they are to be considered with great caution, unless their authenticity and cotemporaneous character is shown *aliunde*. Dr. Fitzporter testifies to the birth of the child about the middle of October, and to its being given away to the respondent in the latter part of that month. So does a female nurse, in his employ, who attended upon the relator, and approximately fixes the date of the child's birth, but who was not present when it was given away.

A wholly disinterested and unimpeached witness, who has never testified before in the controversy, testifies that, as near as he can recollect, in the latter part of October, or beginning of November, 1885, while calling at Dr. Fitzporter's office one evening to have a sprained wrist treated, he saw a child given by the doctor to a female, resembling the respondent, who called at the place, apparently by appointment, accompanied by another female; that, shortly afterwards, the relator, whom he personally knew, came into the room crying, and said that the child was hers, and that she was in trouble. This witness fixes the date approximately, by the injury to his wrist, which he had received some weeks before, an event, the date of which he was likely to remember.

It is admitted by the respondent that she received a female child, in October, 1885, from Dr. Fitzporter, and

that that is the child produced in court. That she called for the child by previous appointment, accompanied by another female, about 6:30 o'clock, P. M., and that the child thus received was tongue-tied, its tongue being afterwards loosened by a surgeon. But the respondent positively asserts that she thus received the child on the sixth of October, and that the child was then only two days old. As to the date, she is corroborated by other testimony, none of which, however, can be stated as that of disinterested witnesses.

Dr. Fitzporter testifies positively that it was the relator's child which he gave to the respondent. That there was only one female child born at his establishment in October, 1885. This testimony, however, is somewhat discredited by the fact that, in a written statement made by him in April, 1886, he gives October 1, 1885, as the date of the birth of the child given to the respondent, and that he admits having stated on a former occasion that he did not recognize the relator when, in October, 1886, she presented herself to him.

The child was illegitimate. The relator states that, almost immediately after it was given away, upon request of its putative father, she left for the state of California, intending to return in a few weeks, but not returning, in fact, until October, 1886 ; that, immediately upon her return, she called upon Dr. Fitzporter, and, learning from him where the child was, she demanded its surrender from the respondent, who refused to comply with her demand, unless she established her maternity by proof.

We are clear that the proof adduced by the relator is sufficient to establish that she is the mother of the child. The only substantial controversy is about exact dates. On that subject, owing to the treacherous character of memory, witnesses may honestly differ. The testimony of a wholly disinterested witness, who is in a position to locate the date by a cotemporaneous serious accident to himself, corroborates, as to date, the evidence

of the relator, of Dr. Fitzporter, and of the relator's nurse, and, when taken in connection with uncontroverted facts, establishes, by a preponderance of evidence, that the child produced in court, in obedience to the writ, is the relator's child.

The only additional question for consideration is, whether the welfare of the child itself requires that it should not be removed from its present custody. An answer in the affirmative to that question, might justify us to deny a change of custody, upon this writ, even if the plaintiff had established a superior legal right. 7 Crim. Law Mag., Jan., 1886, pp. 15-17, and cases cited. To that question, however, under the facts of this case, there can be only one answer. The relator offers to the child a respectable home, and seeks to remove it from one thoroughly unfit for the bringing up of any child.

As, upon the hearing of this writ, the court can make disposition only of the custody of the child, and can not enter into matters of account, it is ordered that the defendant, Mollie Lambert, do at once surrender the child produced by her in court, known as Ella Bates, or Mabel Nofsinger, to the relator, Mary Maggie Nofsinger, and that the relator recover of the respondent the costs of this her proceeding. Thompson, J., concurs. Lewis, P. J., absent.