NETTIE EASLEY, Appellant, v. ARTHUR GORDON, Respondent.

St. Louis City Court of Appeals, December 6, 1892.

1. **Illegitimate Child:** VALIDITY OF CONTRACT BY ITS FATHER TO PAY ITS MOTHER FOR ITS SUPPORT. The mother of an illegitimate child is under the primary duty of supporting it. A contract by the father of the child to pay her for its support is, therefore, without consideration and unenforceable.

2. **Contracts**: CONSIDERATION: MORAL OBLIGATION. *Held* in the course of discussion that, to constitute a moral obligation a good consideration for an express contract, there must have been some pre-existing legal obligation to which it can attach.

*Appeal from the Scotland Circuit Court.*—HON. BEN. E. TURNER, Judge.

AFFIRMED.

*John C. Moore*, for appellant.

*N. M. Pettingill*, for respondent.

There are no bastardy laws in this state. At common law the mother is the natural guardian of an illegitimate child, and is bound to support it. No such obligation to support the child attaches to the father. The contract in suit is, therefore, without consideration. *Nine v. Starr*, 8 Or. 49; Tyler on Infancy & Coverture, p. 285; Schouler on Domestic Relations [2 Ed.] top p. 384; 1 Parsons on Contracts [7 Ed.] p. 338.

ROMBAUER, P. J.—The plaintiff's petition states, in substance, that she is an unmarried woman, and that the defendant is the father of her illegitimate child; that when she became pregnant with the child, which is now two years of age, the defendant promised to her that he would pay for its support, as she had no one else to look to; that she supported the child for two years, and that such support was reasonably worth $500, but that the defendant failed to redeem his promise and pay any part of said sum, wherefore she sues. The court sustained a general demurrer to this petition, and the plaintiff appeals. The only question presented for our consideration is whether an action can be maintained upon an *express promise*, made by

the father to the mother, to reimburse her for the expenses incurred in the support of their illegitimate child.

We have no bastardy act in this state, and the question must be answered by reference to the common law of England, and such statutes of a general nature, not local to that kingdom, and not repugnant to our written laws, as were in force prior to the fourth year of the reign of James I. Revised Statutes, 1889, sec. 6561. The only general statute of England on this subject, passed prior to the reign of James I., is that of 18 Elizabeth, chapter 3, which makes both civil and criminal provisions touching parents of illegitimate children, and provides, among other things, that two justices of the peace, of whom one must be of the *quorum*, in or next unto the limits where the parish church is, shall, and may, by their discretion, take order for the punishment of the father and mother, and for the relief of the parish. That statute is local to the kingdom in its very elements, and could not be carried into effect in this country, and has a bearing on the subject under consideration only so far as it recognizes a legal duty on part of the father to support his bastard child, after its paternity is established by an order of filiation.

The reported cases in England (except *Furillio v. Crowther, infra*) grew out of controversies between the father and third parties, where it was sought to hold the father liable for the support of an illegitimate child which he had acknowledged to be his own, or which, in the law phrase, he had adopted. In *Hesketh v. Gowing*, 5 Esp. 131, Lord ELLENBORO held in such a case "that there was nothing in the objection of the child being *filia nullius* and no order of bastardy made; that the father was certainly liable to the payment of the demand for the nursing and board of his child, though illegitimate, if he adopted it as his own," but that the father

could be charged only on his contract. In *Cameron v. Baker*, 1 Car. & P. 268, BEST, C. J., held: "The father of an illegitimate child is not in the first instance bound to maintain it, unless compelled to do so by an order of magistrates; but, if he consents to pay an annual sum for its support, he must continue to do so, *or* provide for the child at his own expense, *or* give the most distinct notice of his intention to pay such annual sum no longer." In *Furillio v. Crowther*, 7 Dowl. & Ryl. 612, ABBOTT, C. J., held that the father is under no legal obligation *to the mother* to maintain their illegitimate child, unless steps were taken under the statute of Elizabeth, and that he was not bound to continue by-gone payments longer than he thought proper. But in *Nichole v. Allen*, 3 Car. & P. 36, which was a suit by third parties to recover for the maintenance of the child, the same learned judge held that a legal obligation is made out on part of the father to pay for the maintenance of his child, if he knows where it is and he expresses no dissent, and that it is incumbent upon him to show that the child is there against his consent, or that he has refused to maintain it there any longer at his expense.

From the imperfect way in which these cases are reported, it is often difficult to ascertain the exact point decided, but it appeared in *Nichole v. Allen, supra,* that the defendant knew that the child was boarded at the plaintiff's, and that he had allowed £12 a year for its support, and the language of the learned judge, that the defendant was under a legal obligation to support it, must be confined to an obligation to the plaintiff under the facts shown; otherwise the case would be in direct conflict with the case of *Furillio v. Crowther, supra,* decided by him the preceding year.

In the case of an express promise made to third parties the father's liability can readily be supported

on general rules touching the sufficiency of consideration applicable to all contracts, and so even as to an implied promise arising from a course of conduct in reliance of which the plaintiff has acted. Parties are neither under a moral or legal obligation to support the children of others, and, where they do so under a promise of reimbursement, that promise is enforceable on elementary principles. But the mother of an illegitimate child is, at common law, under the primary duty to support it. She and not the father is its natural guardian. Tyler on Infancy & Coverture, 288; *In re Nofsinger*, 25 Mo. App. 116. The child is the heir of the mother but not of the father, and *vice versa*. No duties correlative to rights on part of the father can spring from such a relation, because the law acknowledges no rights on part of the father. Where then is that liability to be found, upon which a promise of this character can rest as upon a sufficient consideration?

Unhampered by precedents, we should say that on principle children born outside of wedlock have an equal claim on both their parents, and that the duty of both their parents to support them must stand on an equal footing; but the analogies of the common law are all the other way, and by it the duties and liabilities of the mother are made paramount to those of the father. To constitute a moral obligation the consideration of an express contract, so that it may be enforced by an action at law, there must have been some preexisting legal obligation. *Greenabaum v. Elliott*, 60 Mo. 25; *Musick v. Dodson*, 76 Mo. 624. It is owing to the rule last stated that the case of *Nine v. Starr*, 8 Ore. 49, which is identical with the case at bar, was decided adversely to the plaintiff.

All the judges concurring, the judgment is affirmed.