In re L_____, Part II.

No. 58202.

Supreme Court of Missouri, En Banc.

Oct. 8, 1973.

David E. Blanton, Blanton, Blanton, Rice & Sickal, Sikeston, for respondents.

Hyde, Purcell & Wilhoit, Robert C. Hyde, Poplar Bluff, for appellant.

SEILER, Judge.

This case involves a suit for the declaration of the paternity of a child L and an order for her support. The child's mother appeared in the cause individually and as next friend of the child. The trial court sustained defendant's motion for summary judgment in the cause, but this order was reversed on appeal, In re L——, 461 S. W.2d 529 (Mo.App.1970). On remand the case was tried to the court without a jury. The court entered judgment declaring child L to be "the child and daughter" of defendant and ordered defendant to pay the mother, plaintiff B, $50 a month for the support and maintenance of the child. An

appeal from that decision was taken to the Court of Appeals, Springfield district, which reversed and remanded the case by opinion, and then transferred it to this court to reexamine existing law and because of the importance of the questions presented, Art. V, Sec. 10, 1945 Mo.Const., V.A.M.S., and rule 83.02, V.A.M.R. We decide the case as on original appeal, Art. V, Sec. 10, supra, and affirm the judgment of the trial court.

It is undisputed that the child L was conceived and born while her mother, plaintiff B, was married to and living with her husband. The couple was married March 9, 1956, and two sons were born of the marriage, in 1957 and 1961 respectively. Plaintiff B and her husband have continued to reside together since the birth of the child L in 1968. At the trial plaintiff B testified that she had not had sexual intercourse with her husband after July 1967. The child L was born July 21, 1968. She said she had an extramarital relationship with the defendant beginning in 1966 and admitted having sexual intercourse with him on several occasions including October 25, 1967, after which time she failed to have further menstrual periods and later learned she was pregnant. Plaintiff B further testified that the defendant admitted to her that he was the father of the child and gave her $90 cash for prenatal care, but during the last two months of her pregnancy denied his paternity.

Plaintiff B's husband corroborated her testimony that the couple had not had sexual intercourse since July of 1967. The husband said he had talked with the defendant about B's pregnancy but that the defendant had not admitted that he was the father of the child.

The defendant denied ever having sexual intercourse with plaintiff B and denied that he was the father of the child L.

The child L, who was three years of age at the time of trial, was presented to the court to demonstrate any resemblance to the defendant.

We are presented in this case with the ancient presumption that a child born in wedlock is presumed to be legitimate, which defendant is asserting for his own purposes rather than those of the child. At common law the presumption was conclusive and therefore a rule of substantive law. Today the presumption is rebuttable, an evidentiary presumption, and is overcome by a showing of substantial evidence ("clear, cogent and convincing proof") to the contrary. In re L———, supra, l. c. 532–533. Upon presentation by the party against whom the presumption operates of substantial evidence to rebut the presumption, the existence or non-existence of the fact once presumed is to be determined from the evidence as if no presumption had ever been operative in the case. JD v. MD, 453 S.W.2d 661, 663 (Mo.App.1970); Simpson v. Blackburn, 414 S.W.2d 795, 801 (Mo.App.1967).

The defendant putative father contends that plaintiffs failed to produce sufficient evidence to rebut the presumption. Under civil rule 73.01(d) the trial court's ". . . judgment shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses . . ." And Missouri cases hold that where ". . . there exists an irreconcilable conflict in the evidence on essential fact issues depending necessarily for determination on the credibility of witnesses, a situation exists wherein the application of the rule of deference to the findings and conclusions of the trial judge is especially appropriate . . ." McCarty v. McCarty, 300 S.W.2d 394, 399 (Mo. 1957).

In this case the court heard and observed the witnesses, saw the mother of the child L, the mother's husband, the putative father of the child, and the child L. We feel that the trial court was in the best position to determine if plaintiffs presented sufficient evidence to rebut the presumption of legitimacy and to establish that de-

fendant was the father of the child and affirm the trial court's determination.

Defendant next asserts that the trial court erred in allowing the husband of B to testify to his nonaccess to his wife. Under the Lord Mansfield doctrine enunciated in the English case of Goodright v. Moss, 2 Cowp. 291, 98 Eng.Rep. 1257 (1777), the declarations of a father or mother cannot be admitted to bastardize the issue born after marriage. McCormick on Evidence, Ch. 7, Competency, Sec. 67, p. 146 (1954).

█ We agree with the trial court that the testimony was admissible. There is no dispute that the service of interrogatories by defendant waived the incompetency of plaintiff B to testify to nonaccess, as specifically declared in the case of In re L———, supra, 461 S.W.2d 1. c. 534. The question is whether the incompetency of her husband was likewise waived. In the case of Baker v. Baker, 363 Mo. 318, 251 S.W.2d 31 (1952) this court held that when a defendant waived the competency of a witness under the dead man's statute by taking his deposition, that waiver extended to all witnesses subject to the same incompetency and to the whole of a witness' knowledge of the facts. We think the logic of this decision applies equally to the facts of this case. What practical end is served by allowing the wife to testify to her nonaccess to her husband, but barring the husband from testifying to the very same facts? Once the information as to nonaccess is in the open nothing is gained for the child by keeping out cumulative evidence of the fact.

In addition, defendant does not cite nor can we find any cases which indicate that Lord Mansfield's doctrine is a part of the law of this state. The doctrine first appeared in England in 1777 and so was not adopted as part of the common law of Missouri pursuant to Sec. 1.010 RSMo 1969, V.A.M.S., which adopts the common law as of the fourth year of the reign of James the First in 1607. Industrial Acceptance

Corp. v. Webb, 287 S.W. 657, 660 (Mo. App.1926). In fact, in the early English cases there was no rule at all against using the testimony of a husband or wife, to prove the nonaccess of the husband, Wigmore on Evidence (3rd ed.), Vol. VII, Sec. 2063, p. 358. We find only two Missouri cases in which the doctrine is mentioned. In the case of In re L———, supra, the court, in dicta, presumes the rule to be a part of the law of this state. In the case of JD v. MD, supra, 453 S.W.2d 1. c. 663 the court says: ". . . Under Lord Mansfield's rule neither the husband nor the wife may testify to nonaccess between them when the legitimacy of a child born or conceived in wedlock is in issue. We are not confronted with the task of determining whether this rule is the law in Missouri . . ."

█ Legal writers have discredited evidentiary rules of competency which disqualify witnesses or testimony as to relevant facts as constituting serious obstructions to the ascertainment of the truth. The modern statutory trend is toward discarding or modifying outmoded competency rules. See, for example, Ventresco v. Buskey, 159 Me. 241, 191 A.2d 104 (1963); Moore v. Smith, 178 Miss. 383, 172 So. 317 (1937); and Melvin v. Kazke, 83 N.M. 356, 492 P.2d 138 (1971); McCormick on Evidence, supra, Sec. 71, p. 150 (1954). We note, too, that Missouri has adopted the Uniform Reciprocal Enforcement of Support Law which provides, Sec. 454.210, RSMo 1969, V.A.M.S., that ". . . Husband and wife are competent witnesses to testify to any relevant matter, including marriage and parentage", which is consistent with the modern view. Wigmore on Evidence, supra, Sec. 2064, pp. 368–69, criticizes the Mansfield rule as "incomprehensible", as being without "any true precedent" and as accomplishing no useful purpose when it is realized there are many ways married parents can bastardize their children other than by testimony of nonaccess. We would be unwise to adopt this rule of incompetency at this late date.

Under Missouri law the presumption of legitimacy is clearly rebuttable on a proper showing and all evidence relevant to that issue should be and we hold in Missouri is admissible.

Defendant next contends that the trial court erred in considering as evidence two tapes purported to be of telephone conversations between the plaintiff B and the defendant, because the tapes were at least partially unintelligible, not properly qualified or identified, and no proper foundation was laid.

■ There was sufficient testimony by plaintiff B to serve as a foundation for admission of these tapes into evidence: plaintiff B brought the tapes into the courtroom; she testified she made the tape recordings of telephone conversations between herself and the defendant on January 29 and February 5, 1970, and she said the tapes were made of phone calls made to her by the defendant, whose voice she recognized.

■ As to the objection that the tape recordings were improperly considered as evidence because they were at least partially unintelligible (we have listened to the tapes in question and in many instances the words of the male are inaudible or unintelligible): the point is disposed of by State v. Spica, 389 S.W.2d 35, 48 (Mo.1965) which quotes with approval Monroe v. United States, 98 U.S.App.D.C. 228, 234 F.2d 49, 54–55 (1956), cert. den. 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 76 (1956), where the court said: ". . . No all embracing rule on admissibility should flow from partial inaudibility or incompleteness . . . [P]artial inaudibility is no more valid reason for excluding recorded conversations than the failure of a personal witness to overhear all of a conversation should exclude his testimony as to those parts he did hear. Unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy the recording is admissible, and the decision should be left to the sound discretion of the trial judge . . ." We agree and hold that the trial court did not err in admitting these tapes into evidence.

In most jurisdictions filiation proceedings are statutory, so that the rights and duties of interested persons are defined by the wording of the particular statute. In Missouri an illegitimate child had no right to compel support from the father before this court's decision in R—— v. R——, 431 S.W.2d 152 (Mo.1968). That case established a cause of action for a declaratory judgment on the issue of paternity and, once paternity was established, the right to compel support from the putative father. The case necessarily left unanswered various questions, some of which we are now called upon to address.

■ The court of appeals opinion raises two such points as plain error (rule 79.04) which we feel warrant further discussion. First, it is said that the mother, plaintiff B, was not a proper next friend to represent the child L in this proceeding, and that the trial court had a duty *sua sponte* to require someone other than the mother to act as next friend. The court of appeals reasoning is that ". . . the mother of an infant daughter born during coverture who is asserting a personal claim for a money judgment which is wholly dependent upon having the child declared a bastard, cannot be said to be a person having nonconflicting interests with those of the child . . ."

In some states, by statute, a married woman has no standing to bring a paternity suit. Annot. 98 A.L.R.2d 256 (1964). In absence of legislation to this effect we are unwilling to create such a limitation on the availability of this cause of action.

We agree that where a mother is appointed as next friend to represent her child in such a proceeding there is the possibility that the mother will be more influenced by the immediate financial demands of supporting a child and will fail to give proper consideration to the long range effect the resulting bastardization of the

child will have. This does not mean, however, that the mother is necessarily disqualified because of interest from serving as the next friend for her child in every such case. The trial court has the duty of assuring that the interests of a child are protected in a case before it, and has the power to require the appointment of a new next friend when it feels those interests are not being protected. 42 Am.Jur.2d, Infants, Sec. 163, pp. 153–59. Here the court took no such action. The trial court evidently reasoned that the mother, plaintiff B, was looking out for the interests of her child in proceeding with this suit.

There is no perfect solution to the problem with which we are presented in this case. Assertion of this child's right of support necessarily results in her bastardization. Were we to dogmatically maintain the presumption of legitimacy in this case we still could not guarantee this child a bed of roses. For us to hold that this child is a child of the marriage, where the husband and wife claim two other children as their own and peg this child as illegitimate, is a dubious benefit at best. What course of action is in the best interests of this child is unclear. We are indeed on the horns of a dilemma. Neither resolution of this problem will have a storybook ending, nor guarantee that everyone will "live happily ever after."

■ Secondly, the court of appeals asserts that the child L is the real party in interest in this suit, so that the trial court's order of support to the mother was improper. Relative to the court of appeal's question is a determination of who may properly maintain a paternity suit. In many jurisdictions statutes designate that the child, the mother, the father, or named public officials are proper parties to institute such actions. See Crane v. Battle, 62 Misc.2d 137, 307 N.Y.S.2d 355 (1970) and 10 Am.Jur.2d Sec. 385, pp. 908–09. Unfortunately in Missouri we are unaided by such legislation.

Under the common law in Missouri the mother of an illegitimate child is its natural guardian and has a duty of support. Easley v. Gordon, 51 Mo.App. 637, 641 (1892). The cause of action for support of illegitimates by their fathers, created by R—— v. R——, supra, eases the mother's obligation by requiring the father as well as the mother of an illegitimate child to contribute to its support. The mother has a direct interest in the outcome of this litigation and we hold therefore is a proper party to maintain a filiation suit.

The suit in this case was brought by plaintiff L, a minor, by plaintiff B, her next friend, mother and natural guardian and by plaintiff B. Since plaintiff B was a proper party to this cause of action in her own right, we can not agree with the court of appeals that the order of support to plaintiff B, "the mother of said minor . . . for the support and maintenance of said minor" was improper.

The judgment is affirmed.

HOLMAN, BARDGETT and FINCH, JJ., concur.

DONNELLY, C. J., dissents in separate dissenting opinion filed.

MORGAN and HENLEY, JJ., dissent and concur in separate dissenting opinion of DONNELLY, C. J.

DONNELLY, Chief Justice (dissenting).

In an opinion written by Chief Judge Titus, before transfer to this Court, the essential position of the Missouri Court of Appeals, Springfield District, was expressed as follows:

"In our view, the mother of an infant daughter born *during coverture* who is asserting a personal claim for a money judgment which is wholly dependent upon having the child declared a bastard, cannot be

said to be a person having nonconflicting interests with those of the child. Irrespective of the fact that it may ultimately develop that Plaintiff L is defendant's illegitimate daughter, the infant was entitled to a fair hearing represented by a next friend who was not firmly resolved to bastardize her in all events." (Emphasis mine.)

I recognize that there may be no *general* rule which will do equity in all cases brought under R—— v. R——, 431 S.W.2d 152 (Mo.1968). However, in a case involving a child born *during coverture*, and where, as here, the mother's husband and alleged paramour are both potential sources of assistance to the child, I would insist on the appointment of a next friend other than the mother. I would reverse and remand for new trial after the appointment of a next friend other than Plaintiff B.

I respectfully dissent.