E_____ S_____, Respondent,

v.

G_____ M_____ S_____, Appellant.

No. KCD 26770.

Missouri Court of Appeals, Kansas City District.

March 3, 1975.

Michael J. Albano, Independence, for appellant; Graham, Paden, Welch, Martin & Tittle, Independence, of counsel.

Lee S. Shapiro and Dale L. Schulte, Kansas City, for respondent; Shapiro, Polsinelli, Waldo & Schulte, Kansas City, of counsel.

Before SOMERVILLE, P. J., and TURNAGE, J., and PRITCHARD, C. J.

PRITCHARD, Chief Judge.

The issue is whether the trial court erred in finding in the face of the presumption of legitimacy of a child born during wedlock, that respondent could not have been the father of a male child born to appellant wife during her marriage to respondent. Implicit in the court's finding on that issue is the second issue of whether respondent should have been granted the divorce upon the alleged ground that the wife was pregnant "although plaintiff now is and has been sterile."

The parties were married on August 10, 1968, and were separated on March 16, 1972. The husband had previously been married for 25 years, and had four children by his first wife. In 1956 before the youngest daughter was born of that marriage, the husband went to a Doctor Brown in Kansas City and "had myself taken care of to where I would become sterile. * * * Well, they tied and made an incision and clipped and took part of the cord out and again tied me so that I could not have any more children." He had never had any kind of operation to undo that operation. After the operation he continued to have normal intercourse with his first wife for around 10 years, during which time there were no birth control devices of any kind used for probably 5 to 8 years, and she did not conceive any other children, but after the divorce from him and her remarriage, she had one baby.

The husband learned that the wife was pregnant in March, 1972. Thereafter a semen sample was taken by the husband, the wife going with him, to a laboratory where it was tested. The wife was given a pregnancy test in Hickman Mills. According to the husband, they tested the sample in the laboratory, "and said that my operation was still good; that I'm sterile and she was pregnant." The wife discussed with the husband as to when she became pregnant, and it was his understanding that it was in the latter part of December, 1971. During that month she was away for a weekend, and he visited his folks for a week in Pittsburg, Kansas. Up to the time the husband learned that the wife was pregnant, he had been sleeping with her

and had intercourse with her two or three times a week, including the month of December, 1971. The husband was unable to say definitely that the wife in fact had intercourse with another man.

The medical records of the husband's bilateral vasectomy in 1956 show "no sperm seen." On March 10, 1972, the record of the sperm count check showed "no sperm seen." On March 15, 1972, the records show "Seminal Fluid: Volume 4 CC No sperm cells found. Imp. [Impression]: Non Fertile Specimen." On the same date the wife's UCG pregnancy test showed positive.

Dr. Andrew D. Mitchell, a physician-urologist, examined the husband on April 2, 1973, and examined a fresh specimen of semen which the husband gave him. He found no sperm, the reason for which was, "Well, the—subjectively Mr. S———— and Mr. Hickman had indicated that he had had a vasectomy and the only objective evidence other than the absence of sperm was that I could feel the defect in the vas on each side where he had had the operation." From his examination, Dr. Mitchell could tell that the husband had a vasectomy, a cutting and tying. In answer to a question hypothesizing the facts, Dr. Mitchell gave his opinion to a reasonable degree of medical certainty that the husband could not have fathered the child in question, and further, "Q. Would you say on the basis of these facts that it would be impossible for Mr. ———— to have fathered the child? A. Yes." The longer the time after the vasectomy the less chance there would be of even surgically hooking the ends of the vas back together so that the operation restores fertility. The doctor did testify further on cross-examination that if there were any surgical devices used after December [1971] or January, 1972, it would change the results of the test: "A. Yes, he would have had to have two operations, one to hook them back up and the other one to do the vasectomy again, because he was, certainly was sterile on April 2, 1973." He acknowl-

edged that he ran no test on the husband in December [1971] or January, 1972.

The wife testified that she had been faithful to the husband during the marriage, denied that she had any relations with other men, and testified that she had intercourse with the husband a couple of times a week up to the time of the separation. Prior to the marriage, the wife was aware that the husband had a vasectomy, and to her knowledge he never did have any kind of operation to repair it.

The court entered a decree of divorce for the husband, found that there were no children born of the marriage, and specifically found that the child in question was not fathered by the husband.

Appellant argues that the trial court erred and abused its discretion in finding for respondent because respondent husband's evidence failed to overcome the strong presumption of legitimacy of children born in wedlock, and that the finding had the effect of bastardizing the child in question.

■ It is true, as appellant states and as is set forth in F———— v. F————, 333 S.W.2d 320, 326[9] (Mo.App.1960), "[T]he law presumes children born in wedlock to be legitimate. (Citing cases.) This presumption is the strongest known to the law." It was there noted that the severity of the common law rule of conclusiveness of the presumption had been modified so that the presumption may be rebutted, that being the law today in Missouri. "But the burden of proof is on the party asserting the illegitimacy, Jackson v. Phalen, [237 Mo. 142, 140 S.W. 879 (Mo.1911)]. And the burden is indeed an onerous one, for the quantum of evidence necessary to overcome the presumption must be not only clear and convincing, (citing case), but it must be such that no conclusion other than that of illegitimacy can be reached." (Brackets added.) For the collection of the cases as to the effect of the presumption, see "Anno.: Presumption-Legitima-

cy-Paternity," 57 A.L.R.2d 729; and "Anno.: Presumption of Legitimacy-Disproof", 128 A.L.R. 713.

■ Giving to appellant full benefit of the admitted fact that regular intercourse was had between the husband and her during the month of December, 1971, when conception occurred, and that there was no positive proof that she, during that time, had intercourse with another man, yet there is clear and convincing proof, for the trier of the fact, "such that no conclusion other than that of illegitimacy can be reached." That proof is this: The husband had a bilateral vasectomy in 1956, after which the records say "no sperm." Remaining married to his then wife for about 10 years, during which time no contraceptive devices were used for 5 to 8 years, she did not conceive. After her remarriage, the husband's then wife conceived and had a baby by her second husband, which fact showed her capability of becoming pregnant. Then the husband married appellant in 1968, and thereafter, regular intercourse being had, appellant did not conceive until December, 1971. On March 10 and 15, 1972, the sperm count tests of the husband showed "no sperm seen" and "no sperm cells found. Imp: Non Fertile Specimen." Then again, upon examination by Dr. Mitchell, who found the defect in the vas on each side where the husband had the operation for cutting and tying, who found no sperm on examination of a fresh seminal specimen, it was concluded by him that it would have been impossible for the husband to have fathered the child. Appellant relies upon the statement by the court in Crepaldi v. Wagner, 132 So.2d 222, 224 (Fla.App.1961), "It is noted that each of defendant's medical experts admitted in their depositions that there have been cases reported in medical journals wherein men were known to have more than one right or left vas deferens, in which cases the removal of only one right and left vas deferens would not render the patient sterile." There was no proof here that the husband was possessed of more than one right or left vas deferens, and considering all the other tests for sterility, and the facts of nonconception by two women after intercourse over a long period of time (until the child herein question was conceived by appellant), the inference is that the husband did not have more than the normal· number of vas deferens, and that his vasectomy was successful. The Crepaldi court reversed and remanded a summary judgment for the husband who had had a vasectomy, saying that there were genuine issues of fact, among other things, as to when the vasectomy occurred with respect to the time that the plaintiff conceived the child. It is no authority for the purpose of rebutting the presumption of legitimacy, and as noted by the court, 132 So.2d 225, evidence of sterility, shall be considered by the trier of facts as any other evidence, and if believed, is sufficient to support a finding based thereon. See the strange factual situation in the case of In Re Kessler's Estate, 76 S.D. 158, 74 N.W.2d 599 (S.D.1956), where cousins married, and had five children, two of whom were inmates of the State Hospital. Pursuant to a statute dealing with feeble-minded persons, the father of the children had a vasectomy performed upon his person, and thereafter he and his wife cohabited, and she, in two years, gave birth to a child. That child, by guardian, claimed letters of administration in the estate of Kessler, his alleged natural father, who had taken him into his home treating him and holding him out to be his son. The purpose of the operation was to eliminate " 'all possibility of procreation.' " It was said that the expert testimony of sterility warranted the trier of the fact to believe it, which could have convinced him beyond a reasonable doubt that the operation did produce the result of sterility, and that belief could well have been strengthened by the evidence as a whole. The court would not disturb the trial court's finding, and Kessler was held to be the natural father of the child in question.

**656**

Compare Hughes v. Hughes, 271 P.2d 172 (Cal.App.1954). A contrary result was had in Whitman v. Whitman, 140 Ind.App. 289, 215 N.E.2d 689 (Ind.App.1966), but there the results of tests for sterility were made after the child was born; the husband's credibility was subject to question; the doctors were unable to say that the vasectomy operation was successful or how long the husband could have been sterile; and their assumptions were not supported by the evidence. Under the Indiana rules, the court was permitted to view the evidence favorable to appellee (wife). Thus the case may be distinguished.

Rasco v. Rasco, 447 S.W.2d 10 (Mo. App.1969), is relied upon by appellant as authority that the evidence here is not sufficient to rebut the presumption of legitimacy. That case may be distinguished. There the issue turned upon the medical expert's testimony concerning the results of blood tests as between the alleged father and the child. Although the doctor testified that based upon reasonable medical certainty, the defendant was not the father of the child, he refused to say that it was impossible, and thus the court ruled that the strong presumption of legitimacy had not been overcome. Here, Dr. Mitchell testified in answer to a hypothetical question encompassing all of the facts that it was impossible for the husband to have fathered the child. To this is added the evidence of sterility before and after the husband's marriage to appellant, and the fact that the husband fathered no child until the time this child was allegedly fathered by him.

Under the whole of the evidence here, the trial court did not err in its specific finding that the husband was not the father of the child. It follows that by reason of the wife's infidelity and sexual relations with another man, which must have occurred, that the court did not err in granting the husband a divorce. The judgment is affirmed.

All concur.