RETIREMENT BOARD OF the POLICE RETIREMENT SYSTEM OF KANSAS CITY, Missouri, Plaintiff-Respondent,

v.

Barrett Craig NOEL, By and Through His Guardian Ad Litem, Phyllis NOEL, et al., Defendant-Appellant.

No. WD 33576.

Missouri Court of Appeals, Western District.

May 31, 1983.

Dennis J. Brundige, Kansas City, for defendant-appellant.

Gerald W. Gorman, Truman K. Eldridge, Jr. and John A. Vering, III (argued), Kansas City, for plaintiff-respondent.

Before PRITCHARD, P.J., and MANFORD and NUGENT, JJ.

NUGENT, Judge.

The Retirement Board of the Police Retirement System of Kansas City, Missouri brought this action in interpleader and for a declaratory judgment against Barrett Craig Noel (Barry), the putative son of slain officer Russell D. Mestdagh, and Garnett C. Bailey, the officer's mother and designated beneficiary. At issue were the amount and the proper disposition of the officer's death benefits, and the Board's entitlement to attorney's fees as a disinterested stakeholder. The court denied Barry's claim and found that the Board was not a disinterested stakeholder. Both parties appeal. We affirm the judgment.

Barry's mother and guardian ad litem asserts that the court was barred by collateral estoppel from holding that the boy was not officer Mestdagh's son; that the finding was against the weight of the evidence; and that the court denied Barry equal protection of the law in holding that "child" as used in §§ 86.447 and 86.453[1], dealing with benefits due dependents of deceased members of the police retirement system, excluded illegitimate children.

## I. The Facts

The uncontroverted facts of this case are as follows: Phyllis Noel met and began having sexual relations with Russell Mestdagh in December, 1971. At that time, Ms. Noel was married to Jerry L. Noel from whom she was divorced in July, 1972. She gave birth to Barry Noel on October 8, 1972.

Mr. Mestdagh was never married. On January 2, 1975, he was shot and killed in the line of duty as a police officer. He was a member of the police retirement system and on September 7, 1971, had designated his mother, Garnett C. Bailey, as his sole beneficiary. On January 13, 1975, she filed a request for death benefits.

On April 11, 1975, Barry Noel, by his mother and next friend, Phyllis Noel, filed a petition for declaration of paternity in the circuit court against the estate of Mr. Mestdagh. The petition was dismissed on April 19, 1977, on the grounds that the cause of action abated on the death of the putative father. On September 20, 1977, the probate court of Jackson County determined the heirs of Mr. Mestdagh to be his parents and three sisters.

In 1978, Barry Noel submitted a workmen's compensation claim for the death of Mr. Mestdagh. Hearings were held on March 7 and 10, 1978, at which several witnesses testified that Mr. Mestdagh had admitted paternity. On June 22, 1978, the referee awarded Barry Noel death benefits of $95 per week until age eighteen (a total of $77,558), and made a finding that "although there is the strongest presumption in favor of the child being born in wedlock, I find from the facts presented here, that the burden has been met and that, in fact, Russell Mestdagh is the father of Barrett Craig Noel . . . ." This award was appealed (the record does not show by whom) and a settlement reached under which the police department paid Barry Noel $40,000. The officer's mother was not a party to that action.

On July 21, 1980, the Retirement Board filed a first amended petition for interpleader and declaratory judgment stating in Count I that §§ 86.447 and 86.453[2] re-

---

1. All sectional references are to Revised Statutes of Missouri, 1978, unless otherwise indicated.

2. Section 86.447 provides in pertinent part:

1. Upon receipt of the proper proofs of death of a member in service for any reason whatever . . . there shall be paid, in addition to all other benefits, the following:

(2) To his child or children under the age of eighteen years at the time of decease, twenty-five dollars per month each until he or she shall attain the age of eighteen years . . . .

. . . . .

2. If there is no surviving spouse . . . the total amount of the surviving spouse's pension shall be added to the amounts received by and shall be divided among the children under the age of eighteen years . . . .

. . . . .

4. If there is no surviving spouse or children under the age of eighteen years . . . surviving the deceased member, his accumulated contri-

quire it to pay benefits to the children of its deceased members but that it was uncertain as to whether the section includes illegitimate children. Accordingly, it alleged that

If defendant Barrett Craig Noel is the natural child of Russell D. Mestdagh and if the words "child" and "children" as used in Section 86.447 R.S.Mo. (1978) include an illegitimate child and illegitimate children, plaintiff is required ... to pay all benefits to Barrett Craig Noel to the exclusion of Russell D. Mestdagh's named beneficiary Garnett C. Bailey. However, if Barrett Craig Noel is not the natural child of Russell D. Mestdagh or if the words "child" and "children" as used in [the statute] do not include an illegitimate child ... plaintiff is required ... to pay all benefits to Russell D. Mestdagh's designated beneficiary, Garnett C. Bailey.

Further, it stated that "[p]laintiff is ready and willing to pay said benefits to the person lawfully entitled thereto, but the plaintiff is unable to determine which one of said defendants is entitled to the same, and plaintiff may be subjected to multiple liability for a single obligation" and prayed that Barry Noel and Garnett C. Bailey be required to interplead their respective claims.

In Count II, the Retirement Board asked for clarification of the amount of benefits to be awarded Barry Noel if he were found to be the child of Russell Mestdagh (specifically, whether the workmen's compensation award must be offset against death benefits), and for its costs including a reasonable attorney's fee.

At trial, the Retirement Board offered only the testimony of Garnett C. Bailey who stated that, although he saw her son at least once a week from 1971 to 1975, he had never mentioned Phyllis Noel. He had, however, introduced her to two other girl-

friends who accompanied him to family gatherings. One in particular she remembered as "like part of the family", and the one "he probably eventually would marry." She testified that in spite of a "very good relationship" with her son, he never mentioned having a child.

William Blackman, former police officer and roommate of Russell Mestdagh, testified on behalf of Barry Noel and stated that Mr. Mestdagh "was probably the best friend I ever had." He introduced Phyllis Noel to Russell Mestdagh and gave the date of their first meeting as December 4, 1971. Three weeks before his death, Mr. Mestdagh told Mr. Blackman that he intended to try to get Barry Noel's name changed to Mestdagh. According to Mr. Blackman, Russell Mestdagh "was concerned with whether or not Phyllis was going to try to shaft him for money ... but there was no question as to whether or not the boy was his."

Two other friends of Russell Mestdagh, Philip White and Kim Webb, testified that he had told them about his son, Barry. Neither knew of any support payments to Phyllis Noel.

Phyllis Noel testified that she separated from her husband, Jerry Noel, in February, 1971, by whom she had three children, aged fourteen, thirteen and ten at the time of trial. Barry Noel was then nine. She stated that her first sexual relations with Russell Mestdagh occurred sometime after December 4 but before Christmas of 1971, and that from the time of that first union until Barry was born, she had no sexual relations with any other man. She claimed to have last had sexual relations with her husband in November, 1971. She stopped seeing Mr. Mestdagh when she began to show her pregnancy and avoided him until she informed him of Barry's birth when the child

butions shall be paid in one sum to his named beneficiary or to his estate.

Section 86.453 provides in pertinent part: Upon the receipt of the proper proofs of death of a member in service arising out of an accident or occupational disease, there shall be paid to his surviving spouse, or if there be no surviving spouse, then to his child or children under the age of twenty-one years ... the sum of twenty thousand dollars payable five thousand dollars cash and the sum of three hundred dollars per month thereafter until the balance is fully paid.

was two months old. Their relationship then continued until the time of Mr. Mestdagh's death.

According to Ms. Noel, Mr. Mestdagh acknowledged that Barry was his son and provided support money, leaving $10, $15 or $20 on the television from time to time.

She testified that she did not bring a paternity suit while Mr. Mestdagh was alive because such an action probably would have cost him his job. Nevertheless, she did file a complaint with the police department on a date she could not remember. She testified that in this complaint she was not seeking support, but "was more asking that he acknowledge it." In response to the question, "So at that particular point in time, Russell was not acknowledging Barry as his son?" she replied, "Not openly, to, say, the police department, etc."

In an order dated January 14, 1982, the trial court made findings of facts including the following: Russell Mestdagh could have changed his beneficiary record to designate Barry Noel as his child, yet failed to do so; Russell Mestdagh, in light of his close personal relationship with his mother, would have been likely to mention a child to her; minor gifts of money to Phyllis Noel did not constitute significant support payments and were not an acknowledgement of paternity; photographs before the court of Russell Mestdagh and Barry Noel revealed no physical resemblance; Russell Mestdagh never, under oath, acknowledged Barry Noel as his child, nor provided for him in a will, nor legitimated him by marrying his mother; a rational basis exists for distinguishing between legitimate and illegitimate children under §§ 86.447 and 86.453 because of the practical problems in locating illegitimate children and paying them promptly, and because "paying benefits to illegitimate children as they make claims is likely to result in the plaintiff paying benefits twice"; the court was "not impressed with the testimony of witnesses Phyllis Noel, William Blackman, Phillip White and Kim Webb and their combined testimony is not persuasive on the issue of paternity"; Barry Noel "failed to carry his burden of establishing that he was in fact the illegitimate child of Russell Mestdagh"; and the Retirement Board was not entitled to attorney's fees because it is not a disinterested stakeholder and "is itself benefited from the bringing of the action herein."

The trial court concluded that Garnett C. Bailey was entitled to $2,056.93 in benefits; that Barry Noel was not entitled to benefits because he is not the child of Russell Mestdagh; and that even if Barry Noel were the child of Russell Mestdagh, he would not be entitled to benefits because "the Missouri Legislature intended that benefits under [§§ 86.447 and 86.453] be payable only to legitimate children."

On appeal Phyllis Noel argues (1) that the trial court's holding that Barry Noel is not the child of Russell Mestdagh is barred by collateral estoppel because of the determination by the Division of Workmen's Compensation that he is the child of Russell Mestdagh; (2) the trial court's holding was against the weight of the evidence; and (3) the holding that "child" as used in §§ 86.-447 and 86.453 excludes illegitimate children denies illegitimates equal protection of the law as guaranteed by the Fourteenth Amendment of the U.S. Constitution. On cross-appeal, the Retirement Board argues that the trial court erred in holding that it was not entitled to an award of attorney's fees on the basis that it was not a disinterested stakeholder because any benefit to itself was incidental and because even an interested stakeholder is entitled to recover that portion of its attorney's fees applicable to its right to interplead to avoid a multiplicity of claims.

## II. The Collateral Estoppel Question

As to Phyllis Noel's first point that the trial court's holding is barred by collateral estoppel, we cannot agree. Her argument is based on the fact that when she brought her claim for workmen's compensation benefits on behalf of her son, the referee specifically found Barry Noel to be the son of Russell Mestdagh.

The court in *Oates v. Safeco Ins. Co. of America,* 583 S.W.2d 713, 719 (Mo.1979) (en banc), listed the following factors to con-

sider in determining whether the application of collateral estoppel is appropriate: (1) whether the issue decided in the prior adjudication was *identical* (court's emphasis) with the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; and (3) whether the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication.... Most courts have added a fourth factor ... whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit.

The factor at issue here is whether the parties are the same as those in the workmen's compensation proceeding. Ms. Noel argues extensively that the Retirement Board is in privity with the police department and thus collateral estoppel applies. Although we express some reservation about this argument for the reason that the record does not reveal exactly what the relationship is between the Retirement Board and the police department, we find collateral estoppel inapplicable for the more fundamental reason that Garnett Bailey was not a party to the earlier proceeding and, as the named beneficiary and alternate recipient of the benefits, is the party most affected by the ruling of the trial court.

Mrs. Bailey neither applied for workmen's compensation benefits arising from her son's death nor contested the award to Barry Noel. The record does not reveal that she was even aware of the proceeding. Having made no claim herself, she neither presented evidence at that hearing to rebut paternity nor had motivation to do so. Although as the putative grandmother she arguably had some interest in the question of the paternity of Barry Noel, "privity within the meaning of the doctrine of issue preclusion ... is not established from the mere fact that persons may happen to be interested in the same question, or in proving or disproving the same state of facts." *American Polled Hereford Assoc. v. City of Kansas City,* 626 S.W.2d 237, 241 (Mo.1982).

In that case, the Supreme Court cited and quoted at 242, *Postal Telegraph Cable Co. v. Newport,* 247 U.S. 464, 476, 38 S.Ct. 566, 570, 62 L.Ed. 1215 (1918) as follows:

The doctrine of res judicata rests at bottom upon the ground that the party to be affected ... has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction.... The opportunity to be heard is an essential requisite of due process of law in judicial proceedings.... [S]o [a state] cannot without disregarding the requirements of due process, give a conclusive affect [sic] to a prior judgment against one who is neither a party nor in privity with a party therein.

More specifically, in *Ash v. Modern Sand & Gravel Co.,* 234 Mo.App. 1195, 122 S.W.2d 45, 50 (1938), the court stated that the record of a workmen's compensation case "can only bind those who are parties thereto." It held that the seven-year-old son of a fatally injured employee was not bound by the record of an earlier proceeding to which he was not a party and which recognized the deceased's mother as a dependent.

Here, one of the two claimants to the retirement system benefits of Russell Mestdagh did not participate in the earlier workmen's compensation proceeding. Therefore, at the time of this trial, she had not had an earlier opportunity to present evidence rebutting the claim that her son was the father of Barry Noel. Fairness and the fundamental requirements of due process dictate that she cannot be bound by that earlier proceeding which determined the paternity question in her absence. We so hold.

### III. The Sufficiency of the Evidence

In Ms. Noel's second point, she argues that the trial court's finding that Barry Noel failed to carry his burden of establishing that he was the son of Russell Mestdagh was not supported by substantial evidence and was against the weight of the evidence.

Before considering this question, we must examine the nature of the burden Phyllis Noel was attempting to carry when

she undertook this effort to establish that a child conceived during a valid marriage was not the child of that marriage, but was fathered by another. The burden of proving illegitimacy is on the party asserting it. *J.M.L. v. C.L.,* 536 S.W.2d 944, 947 (Mo.App. 1976). Traditionally, the law has presumed that a child conceived in wedlock is legitimate, a presumption frequently said to be "the strongest known to law." *Bernheimer v. First National Bank of Kansas City,* 359 Mo. 1119, 225 S.W.2d 745, 751 (1949) (en banc).

Historically, this ancient presumption "was based upon broad principles of natural justice: the supposed virtue of the mother, and the protection of innocent offspring from the odium and disabilities of bastardy," *Simpson v. Blackburn,* 414 S.W.2d 795, 800 (Mo.App.1967), and was said to be both conclusive and a rule of substantive law. This rule has gradually eroded, however, and in its most recent pronouncement on the subject, the Missouri Supreme Court has held that the presumption is

> rebuttable, an evidentiary presumption, and is overcome by a showing of substantial evidence ("clear, cogent and convincing proof") to the contrary.... Upon presentation by the party against whom the presumption operates of substantial evidence to rebut the presumption, the existence or non-existence of the fact once presumed is to be determined from the evidence as if no presumption had ever been operative in the case.

*In Re L——, Part II,* 499 S.W.2d 490, 492 (Mo.1973) (en banc).

■ Although decisions by our courts of appeal post-*In Re L——, Part II,* have attempted to add various burdens to the requirement of "clear, cogent and convincing proof,"[3] we must agree with Judge

Dixon, writing for this court, in *Aversman v. Danner,* 616 S.W.2d 117, 121 (Mo.App. 1981), that such additional requirements are "simply not consistent with [*In re L——, Part II*] with respect to the quality or quantum of proof to overcome the presumption." The Missouri Supreme Court, in *In re L——, Part II,* required only "clear, cogent and convincing proof," a standard demanding only that "the court should be *clearly convinced* of the proposition to be proved. This does not mean that there may not be contrary evidence (Court's emphasis)." *Aversman v. Danner, supra,* at 121, quoting *Grissum v. Reesman,* 505 S.W.2d 81, 86 (Mo.1974). Absent such proof, we must affirm the trial court's finding that the burden had not been met. *Murphy v. Carron,* 536 S.W.2d 30 (Mo.1976) (en banc).

■ Applying this standard, we cannot say that the trial court's determination of paternity was in error. The evidence is simply not so "clear, cogent and convincing" that the trial court *must* have been "clearly convinced" that Russell Mestdagh was the father of Barry Noel. This is so primarily because, as in most cases involving the question of paternity, the issue is one of credibility. Contrary to Phyllis Noel's assertions, although her testimony as to the facts surrounding the conception of Barry Noel was uncontradicted and, in fact, was somewhat supported by the testimony of other witnesses, the trial court had no obligation to accept that evidence.

■ The trial court, when sitting as the trier of fact, may believe all, part or none of the testimony of any witness. *Trenton Trust Co. v. Western Surety Co.,* 599 S.W.2d 481, 483 (Mo.1980) (en banc), even though the testimony is uncontradicted and unimpeached. *Corzine v. Stoff,* 505 S.W.2d 162, 165 (Mo.App.1973). *See also Sebree v. Ro-*

---

**3.** *See Cobb v. Thomas,* 615 S.W.2d 508, 510 (Mo.App.1981) ("[t]he evidence must not only be clear, cogent and convincing but such that no conclusion other than illegitimacy can be reached"); *B.S.H. v. J.J.H.,* 613 S.W.2d 453, 457 (Mo.App.1981) ("the substantial evidence to the contrary when considered with all other evidence in the case [must be] of such a persuasive quality that the fact of illegitimacy can-

not be said to be in doubt"); and *In re K.W.H.,* 477 S.W.2d 433, 436 (Mo.App.1972) ("the burden is indeed an onerous one, for the quantum of evidence necessary to overcome the presumption must be not only clear and convincing ... but it must be such that no conclusion other than that of illegitimacy can be reached.").

sen, 349 S.W.2d 865, 872 (Mo.1961); *Poole v. Campbell,* 289 S.W.2d 25, 32–33 (Mo.1956).

Here, a careful reading of the transcript shows that even had the court believed all of the corroborating testimony by William Blackman, Philip White and Kim Webb, the evidence would have shown only that Russell Mestdagh *believed* that he was the father of Barry Noel. Although recognition of a child as one's own "tends to demonstrate" paternity, we have been reminded by the erudite writer in *Simpson v. Blackburn, supra,* at 805, that a putative father cannot *know* that the husband of his paramour is *not* the father of the child, and "as Shakespeare told us in *The Merchant of Venice,* 'it is a wise father that knows his own child.'" We cannot say, then, that the trial court erred in finding that testimony that Russell Mestdagh believed he was Barry Noel's father was unconvincing on the issue of paternity.

As to the testimony of Phyllis Noel herself, the deference we as an appellate court must extend to the trial court when judging the credibility of a mother testifying to the legitimacy of her child was specifically addressed in *Simpson v. Blackburn, supra,* at 804, as follows:

> In assessing [the mother's] credibility the trial judge has a unique advantage. He could assess her sincerity, her frankness in relating her shameful conduct and acknowledging her previous false testimony [in her divorce from her husband], her reaction to piercing cross-examination, and all the other nuances of a witness's testimony that are apparent to a trier of fact but which disappear in the process of being filtered through the reporter's shorthand notes and typewriter into the transcript.

Here, the trial court stated that it was "unimpressed" by the testimony of Phyllis Noel and that even in combination with the testimony of other witnesses, it was "not persuasive" on the issue of paternity. We must bow to the trial court's superior position to make such a determination.

Taking into consideration, then, that the trial court was free to reject the testimony of Ms. Noel's witnesses and that even had it not done so, the evidence was not so "clearly convincing" that Russell Mestdagh was the father of Barry Noel that the court could not have found otherwise, we affirm the trial court's determination that Barry Noel failed to meet his burden.

Having so decided, we need not reach Ms. Noel's third point that the trial court erred in finding that even if Barry Noel were the illegitimate son of Russell Mestdagh, he would not be entitled to benefits because of his illegitimacy status. Even if we were to rule on this matter in his favor, his failure to prevail on the issue of paternity would still preclude his recovery.

Similarly, we need not reach the point raised on cross-appeal by the Retirement Board that as a disinterested stakeholder it was entitled to an award of attorney's fees. Citing the waiver of its claim to attorney's fees against Garnett Bailey, the Retirement Board requests attorney's fees "only if the Court determines that Barrett Craig Noel is entitled to benefits from Retirement System." In holding to the contrary, this issue is mooted.

For the foregoing reasons, we affirm the decision of the trial court.

All concur.